UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
THE AMERICAN MEDICAL ASSOCIATION, :
et al.,                           :
               Plaintiffs,        :
                                  :
        -against-                 :    00 Civ. 2800 (LMM)
                                  :    MEMORANDUM AND
                                  :    ORDER
UNITED HEALTHCARE CORPORATION,    :
et al.,                           :
               Defendants.        :
                                  :
----------------------------------X

McKENNA, D.J.

     The plaintiffs here move to amend their Third Amended

Complaint ("TAC"), primarily in order to add claims under

RICO and under both state and federal antitrust laws

against specified defendants in this putative class action.

As set forth in further detail in this Court's prior

orders, the plaintiffs in this matter include subscribers

to certain health plans ("Subscriber Plaintiffs"),[1] out-of-

---

[1] The Proposed Fourth Amended Complaint ("PFAC") identifies the
Subscriber Plaintiffs as Gail Temple, Mary Gilmartin, New York State
Senator Toby Ann Stavisky, Janet Stravitz, Cynthia Falk, S. Joseph
Domina, David and Colleen Finley, Paul Steinberg, and Cliff Wilson,
individually and as co-executor of the estate of Michelle Wilson.
(PFAC ¶ 18.)  The Subscriber Plaintiffs include a subcategory of
plaintiffs also designated as the Union Plaintiffs, which consists of
members of the New York State United Teachers, Civil Service Employees
Association, Organization of New York State Management/Confidential
Employees, and New York State Police Investigators Association.  The
Union Plaintiffs entered this lawsuit by means of a Complaint in
Intervention following this Court's granting their unopposed motion to
intervene on January 30, 2003.  See Am. Med. Ass'n v. United Healthcare
Corp., No. 00 Civ. 2800 (LMM), 2003 WL 230897 (S.D.N.Y. Jan. 30, 2003).
For purposes of this motion, they are included within the Subscriber

network medical care providers suing as assignees of their subscribers' benefit claims ("Provider Plaintiffs"),[2] and medical associations suing in their associational capacity on behalf of their members ("Medical Association Plaintiffs")[3] (all, collectively, "Plaintiffs").

Plaintiffs seek to assert these RICO and antitrust causes of action against defendants United Healthcare Corporation, United Healthcare Service Corporation, United Health Group Incorporated, United Healthcare Insurance Company, United Healthcare Insurance Company of New York, United Healthcare of the Midwest, Inc., United Healthcare Services of Minnesota, Inc., and Ingenix, Inc. (collectively, "United Healthcare" or "Defendants"). Defendants oppose Plaintiffs' motion for leave to amend on multiple grounds, including futility, excessive delay, bad faith, and undue prejudice.

Plaintiffs' motion for leave to amend the Third Amended Complaint and, in effect, to file a Fourth Amended Complaint is GRANTED to the extent that the proposed additional claims are based on injuries that occurred after July 15, 2000. However, any the proposed antitrust and

---

Plaintiffs.
[2] Provider Plaintiffs are identified in the PFAC as Michael Attkiss, M.D., and William B. Ericson, Jr., M.D. (PFAC ¶ 20.)
[3] Medical Association Plaintiffs are identified in the PFAC as the American Medical Association, the Medical Society of the State of New York, and the Missouri State Medical Association. (PFAC ¶ 20.)

RICO claims that are based on injuries that occurred before July 15, 2000 are time-barred.

## I. Background

This action involves certain health care plans either directly insured or administered by United Healthcare. These plans allow subscribers to obtain health care services from "out-of-network" or "non-participating" physicians; that is, physicians who "have not entered into contracts with United Healthcare to serve as part of its provider network." (TAC ¶1.)  Under these health care plans, subscribers are reimbursed a certain percentage of the "usual, customary and reasonable" ("UCR") fees for such services based on United Healthcare's calculation of the UCR rates. (TAC ¶1.)

Plaintiffs' TAC alleges that Defendants violated ERISA, the terms of the health care plans, and, in the case of certain plaintiffs, New York's Deceptive Trade Practices statute and contract law.[4] (Pls.' Mot. for Leave to Amend 1.)  The Proposed Fourth Amended Complaint ("PFAC") asserts additional claims against United Healthcare for antitrust and RICO violations based on Defendants' alleged "massive

---

[4] Plaintiffs' TAC includes similar allegations against American Airlines and Metropolitan Life Insurance Company.  The proposed amendments to the TAC -- and consequently this motion for leave to amend the TAC -- implicate only United Healthcare and do not involve either of the other defendants in this action.

scheme to under-reimburse millions of beneficiaries (and their providers)," which Plaintiffs allege to be "maintain[ed] . . . through deception, concealment and the unlawful exercise of market power through [United Healthcare's] ownership and control of the data used by most insurers in setting UCR rates and [United Healthcare's] agreements and coordinated efforts with those insurers."  (Pls.' Mot. for Leave to Amend 1.)

A. Procedural History

    This Court has already considered multiple motions to dismiss in this action, including, most recently, a motion to dismiss the Third Amended Complaint.  See Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM), 2002 WL 31413668 (S.D.N.Y. Oct. 23, 2002) (the "October 2002 Order").  In the October 2002 Order, the defendants' motion to dismiss was granted as to certain portions of Plaintiffs' claims in the TAC and denied as to others.

    The October 2002 Order also instructed the parties to begin "Stage One" discovery, which was "limited to the proper parties in this action as opposed to the merits of the case."  October 2002 Order at *6.[5]  Stage One discovery

---

[5] Following the October 2002 Order, the Union Plaintiffs moved to intervene in this action on  behalf of their members, New York State employees and Empire Plan beneficiaries, and this Court granted that unopposed motion on January 30, 2003.  See Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM), 2003 WL 230897 (S.D.N.Y. Jan.

was completed on or about May 14, 2004, save for the

resolution of a few outstanding discovery disputes. (Pls.'

Mot. for Leave to Amend 4.)

B. The Motion to Amend

Plaintiffs now seek to amend the TAC -- in effect, to

file a fourth amended complaint -- by adding fifteen new

causes of action.  Ten of these, Counts XVI through XXV

(the "Proposed Antitrust Claims"), allege violations of

federal and state antitrust laws.  Specifically, Counts XVI

through XX allege violations of Section 1 of the Sherman

Act, 15 U.S.C. § 1, on behalf of various plaintiffs, and

Counts XXI through XXV allege violations of New York's

parallel antitrust statute, the Donnelly Act, NY Gen. Bus.

Law §§ 340 et seq., on behalf of various New York-based

plaintiffs.  (PFAC ¶¶ 18-27.) Four of the remaining five

proposed counts -- Counts XXV through XXIX -- are based on

alleged violations of RICO, 18 U.S.C. § 1962(c), and are

brought on behalf of various plaintiffs, and the fifth --

Count XXX -- is based on alleged violations of Florida's

RICO Act, Fla. Stat. §§ 895.01 et seq., and is brought on

behalf of beneficiary class members residing in Florida

---

30, 2003).  Thereafter, the defendants moved to dismiss Union
Plaintiffs' Complaint in Intervention and to compel arbitration of the
Union Plaintiffs' claims.  This Court denied both motions on August 22,
2003.  See Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800
(LMM), 2003 WL 28004877 (S.D.N.Y. Aug. 22, 2003).

(collectively, the "Proposed RICO Claims") (all, collectively, the "Proposed Amendments"). (PFAC ¶¶ 28-32.)

1. The Proposed Antitrust Claims

Plaintiffs' Proposed Antitrust Claims are based on United Healthcare's alleged illegal exercise of buying power and unlawful restraint of trade. (Pls.' Mot. for Leave to Amend 8.)  Plaintiffs allege that United Healthcare owns and controls two databases, the Prevailing Healthcare Charges System ("PHCS") and the Medicode/MDR ("MDR") (collectively, the "UCR Databases"), which are used to establish UCR reimbursement rates on which United Healthcare bases its payments to out-of-network medical care providers. (PFAC ¶ 2.)  Plaintiffs allege that United Healthcare manipulates those two databases "to reduce reimbursements paid to beneficiaries well below true UCR rates for out-of-network services that the beneficiaries are contractually entitled to receive." (Pls.' Mot. for Leave to Amend at 7-8.)

Plaintiffs allege that United Healthcare and the Health Insurance Association of America ("HIAA"), from which United Healthcare acquired the PHCS database in October 1998, "conspired and agreed to promote and use the UCR Databases to determine UCR in order to restrain trade and reduce competition." (Id. at 8.)  The alleged purpose

and effect of the alleged UCR antitrust scheme "is (1) to control and reduce reimbursements for out-of-network medical services; and (2) to facilitate United Healthcare's and co-conspiring insurers' concentration and exercise of collective buying power over in-network providers . . ." (Id. at 9.)

2. The Proposed RICO Claims

In addition to these antitrust claims, Plaintiffs also seek to assert five RICO claims against Defendants.  All five Proposed RICO Claims are based on the same alleged enterprise: the "Out-of-Network Reimbursement Enterprise." Plaintiffs allege that this is an association-in-fact enterprise "comprised of [United Healthcare], the users of its UCR Databases, United Healthcare and the entities whose insurance healthcare plans [United Healthcare] administers either as a plan administrator or claims administrator." (PFAC ¶¶ 247, 269.)  This enterprise has allegedly been used to execute fraudulent reimbursement schemes relating to UCR with predicate acts including "false and misleading mailings containing falsified UCR determinations and/or data and information relating to such determinations," "false and misleading wire communications," and "repeated instances of United Healthcare's conversion of plan assets resulting from under-reimbursements through the false

payment schemes." (Pls.' Mot. for Leave to Amend 11.)

## II. Discussion

A. Legal Standard for Motions for Leave to Amend

Under Rule 15(a), leave to amend a pleading "shall be given freely when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has interpreted Rule 15 to permit such amendments unless (1) the party seeking to amend has unduly delayed; (2) the party seeking to amend is acting with a dilatory motive; (3) the proposed amendment would cause undue prejudice to the opposing party; or (4) the proposed amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). Whether to allow a party to amend its complaint is within the discretion of the district court. Id.

Defendants oppose Plaintiffs' motion for leave to amend for each of the four reasons articulated by the Supreme Court in Foman. Defendants argue that the motion should be denied because, first, Plaintiffs have unduly delayed; second, allowing the amendment would unduly prejudice Defendants; and, third, Plaintiffs have acted in bad faith. Fourth, Defendants assert that Plaintiffs' motion should be denied because amendment would be futile in that (1) the proposed claims in the amendment are time-barred; (2) the Proposed RICO Claims fail to state a claim

upon which relief can be granted; and (3) the Provider and Medical Association Plaintiffs' Proposed RICO Claims are barred by the doctrine of res judicata. (Defs.' Mem. in Opp. 1-3; Defs.' Notice of Suppl. Auth. 2.)  The Court will address these arguments seriatim.

B. Undue Delay

Defendants first argue that Plaintiffs' motion for leave to amend the TAC should be denied because Plaintiffs have unduly delayed in seeking the amendment.  In Foman, the Supreme Court held that, despite the liberal pleading standards set forth in Fed. R. Civ. P. 15, a party's motion for leave to amend a pleading may be denied if that party has shown "undue delay" in seeking the amendment.  Foman, 371 U.S. at 182.  As the Court of Appeals has explained, a district court "plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant."  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).  When a "considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay."  Sanders v. Thrall Car Mfg. Co., 582 F.Supp. 945, 952 (S.D.N.Y.

1983), <u>aff'd</u>, 730 F.2d 910 (2d Cir. 1984).  <u>See also</u>
<u>Cresswell</u>, 922 F.2d at 72 ("The burden is on the party who
wishes to amend to provide a satisfactory explanation for
the delay.").

In this case, a significant amount of time passed
between the January 9, 2002 filing of the TAC and the July
16, 2004 filing of the motion for leave to amend the TAC.
To explain this two-and-a-half year delay, Plaintiffs
assert that their proposed amendments are based on
information acquired during Stage One discovery in late
2003 and early 2004.[6]  (Pls.' Reply 13.)  Plaintiffs aver
that they acted promptly after learning the facts that
underlie their proposed antitrust and RICO claims,[7] noting
that they submitted a copy of the proposed amendment to
United Healthcare on May 21, 2004 (approximately one month

---

[6] Notably, Plaintiffs explain their delay as resulting from an
insufficient knowledge of the facts required to plead RICO and
antitrust claims rather than from ignorance of applicable RICO or
antitrust laws.  The latter reason was found unavailing in several
cases on which Defendants rely.  <u>See, e.g.</u>, <u>Sanders v. Thrall Car Mfg.</u>
<u>Co.</u>, 582 F.Supp. 945 (S.D.N.Y. 1983), <u>aff'd</u>, 730 F.2d 910 (2d Cir.
1984); <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d Cir.
1990).
[7] The parties dispute which documents provide the basis for Plaintiffs'
proposed amendments.  Defendants point to certain documents that were
turned over to Plaintiffs earlier in the Stage One discovery process,
arguing that Plaintiffs were long in possession of the information
necessary to form a basis for their proposed RICO and antitrust claims.
Plaintiffs counter that these three documents "are, on their face,
peripheral to Plaintiffs' key allegations in the Amendment" and cite
depositions taken in late 2003 as critical to their proposed
amendments.  The Court finds Plaintiffs' multiple citations to the 2003
depositions persuasive and accepts Plaintiffs' declaration that the
proposed amendments are based, at least in part, on discovery obtained
in late 2003.

after the April 14, 2004 completion of Stage One discovery)
and filed their motion for leave to amend shortly
thereafter, on July 16, 2004.  (Pls.' Reply 13.)[8]  The Court
is persuaded that the basis for Plaintiffs' Proposed
Amendments was formed, at least in part, during Stage One
discovery and finds this a satisfactory explanation for the
delay in the filing of the Proposed Amendments.

Moreover, the Court notes that the cases cited by
Defendants as exemplifying undue delay are all easily
distinguishable from the case at hand.  In each of these
cases, the courts relied not only on the alleged delay but
also on the procedural status of the case.  In several
instances, motions for leave to amend were denied because
discovery had already been completed and post-discovery
motions for summary judgment had been submitted.  See,
e.g., Cresswell, 922 F.2d at 72 (affirming denial of motion
for leave to amend where discovery had closed and plaintiff
offered no valid excuse for delay); Krumme v. Westpoint
Stevens, Inc., 143 F.3d 71, 88 (2d Cir. 1998) (affirming
denial of motion for leave to amend when the case was "near

_____

[8] The Court notes that seeking such consent is in accordance with Fed.
R. Civ. P. 15(a) and that Plaintiffs' attempt to obtain Defendants'
consent provides some justification for the three months of delay
between the seeking of consent in April 2004 and the filing of this
motion in July 2004.  See generally Journal Publishing Co. v. Am. Home
Ins. Co., 771 F.Supp. 632, 637 (S.D.N.Y. 1991) (permitting plaintiffs
to amend their complaint four years after the filing of the original
complaint where, inter alia, plaintiffs had sought defendants' consent
to the amendment in order to avoid motion practice).

resolution and discovery had been completed"); C.L.-
Alexanders Laing & Cruickshank v. Goldfield, 739 F.Supp.
158, 166 (S.D.N.Y. 1990) (denying motion for leave to amend
six months after the close of discovery and after the
submission of the defendant's post-discovery motion for
summary judgment).[9]

    In other cases relied on by Defendants, courts denied
motions for leave to amend because they were made following
the deadline set by the trial court for such amendments.
See, e.g., Nas Electronics, Inc. v. Transtech Electronics
PTE, Ltd., 262 F.Supp.2d 134, 150-51 (S.D.N.Y. 2003);
Champlain Enterprises, Inc. v. United States, 945 F.Supp.
468, 475 (N.D.N.Y. 1996).  Finally, in still other cases
cited by Defendants, courts denied motions for leave to
amend that were filed on the eve of trial.  See Zahra v.
Town of Southold, 48 F.3d 674, 686 (2d Cir. 1995)
(affirming denial of motion for leave to amend because,
inter alia, it was made three months before trial); Roorda
v. American Oil Co., 446 F. Supp. 939, 947 (W.D.N.Y. 1978)
(denying motion for leave to amend that was filed eleven
days before trial was scheduled to begin).

---

[9] A motion for summary judgment as to certain plaintiffs has been filed
in this case, but it is based not on the merits but on the results of
Stage One discovery, which was limited to preliminary matters such as
the proper parties.  It is thus unlike the motions for summary judgment
in the cited cases, which were all filed post-discovery, reflecting the
advanced procedural status of those cases.

Despite the length of time that has passed since the filing of the original complaint and of the TAC, the case at hand remains at an earlier procedural stage.  Merits discovery is in the early stages and has, in fact, been stayed pending Stage One discovery, which was "limited to the proper parties in this action as opposed to the merits of the case."  October 2002 Order at *6.  No scheduling order or deadline for filing motions to amend the pleadings has expired.  And, of course, this case is nowhere near to being on the eve of trial.  The Court therefore finds that Plaintiffs have not unduly delayed and declines to exercise its discretion to deny Plaintiffs' motion for leave to amend because of delay.

C. Dilatory Motive

In addition to undue delay, Defendants assert that Plaintiffs' motion for leave to amend should be denied because Plaintiffs acted with bad faith.  Under Rule 15(a) as construed by the Supreme Court in Foman, a party's dilatory motive is a legitimate basis for a court's denying that party's motion to amend a pleading.  Foman v. Davis, 371 U.S. 178, 182 (1962).  "When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims . . . the court is free to deny leave to amend."  PI, Inc. v. Quality Products, Inc., 907 F.Supp.

752 (S.D.N.Y. 1995) (citing <u>Ansam Assocs., Inc. v. Cola</u> <u>Petroleum, Inc.</u>, 760 F.2d 442, 446 (2d Cir. 1985)).  In <u>PI,</u> <u>Inc.</u>, the plaintiff moved to amend its complaint following oral argument on the defendant's motion to dismiss.  The <u>PI, Inc.</u> court found this to be "clearly a dilatory tactic to avoid the dismissal of this action," noting that this was "also the second time that the plaintiff has used the tactic of waiting for the defendants to file motions to dismiss before moving to amend the complaint." <u>PI, Inc.</u>, 760 F.2d at 765.

Defendants point to two indicators of Plaintiffs' alleged bad faith.  First, they note that Plaintiffs filed this motion "shortly after Defendants filed their summary judgment motion," which Defendants assert demonstrates "anticipation of an adverse ruling on the motion" that required Plaintiffs to make the present motion "in a transparent effort to salvage their complaint."  (Defs.' Mem. in Opp. 50.) Second, Defendants argue that Plaintiffs' motion for leave to amend is "an apparent retaliatory strike" based on Defendants' antitrust counterclaims because it was filed approximately six weeks after completion of briefing on Plaintiffs' motion to dismiss Defendants' counterclaims.  (<u>Id.</u> at 50-51.)

Unlike in <u>PI, Inc.</u>, here the timing of Plaintiffs'

filing of their motion for leave to amend the TAC is not
"clearly a dilatory tactic."   PI, Inc., 760 F.2d at 765.
Defendants' assertion that Plaintiffs made this motion in
anticipation of an adverse ruling on Defendants' summary
judgment motion is belied by the fact that Plaintiffs
provided a draft of the PFAC to Defendants on May 21, 2004
-- before Defendants had filed their motion for summary
judgment. (Pls.' Reply 19; Quackenbos Decl. ¶ 20.)   The
PFAC therefore could not have been prepared "in
anticipation of an adverse ruling" or "to salvage [the
Plaintiffs'] complaint."   (Defs.' Mem. in Opp. 50.)

     Nor is there any indication -- other than Defendants'
bald assertion -- that Plaintiffs filed this motion as some
kind of retaliatory strike.   The Court declines to base a
finding of bad faith on such grounds in the absence of any
evidence, particularly as Defendants appear to have
misconstrued the underlying facts in presenting their first
example of Plaintiffs' alleged bad faith.   Plaintiffs'
motion for leave to amend the TAC will not be denied on the
basis of Defendants' unsupported allegations that
Plaintiffs acted with dilatory motive or bad faith.

D. Prejudice

     Third, Defendants urge the Court to deny Plaintiffs'
motion for leave to amend on the grounds that permitting

such amendment would result in undue prejudice to
Defendants.  In Foman, the Supreme Court held that leave to
amend can be denied when the proposed amendment would cause
undue prejudice to the opposing party.  Foman v. Davis, 371
U.S. 178, 182 (1962).  The Court of Appeals has advised
that, "[i]n determining what constitutes 'prejudice,'
[courts] consider whether the assertion of the new claim
would: (i) require the opponent to expend significant
additional resources to conduct discovery and prepare for
trial; (ii) significantly delay the resolution of the
dispute; or (iii) prevent the plaintiff from bringing a
timely action in another jurisdiction." Block v. First
Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).[10]

    Defendants argue that two of the three Block factors
apply here because allowing an amendment to add the
Proposed RICO Claims and the Proposed Antitrust Claims
would require the expenditure of additional resources in
discovery and trial preparation and would significantly

[10]  In assessing the degree of prejudice required, the Block court
observed that the required demonstration of prejudice varies inversely
with the period of unexplained delay in seeking the amendment: "[T]he
longer the period of an unexplained delay, the less will be required of
the nonmoving party in terms of a showing of prejudice." Block v. First
Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (quotations omitted)
(emphasis added).  Here, because the Court has found that the
Plaintiffs provided an adequate explanation for their delay, Defendants
are not entitled to a lower threshold level in showing prejudice
despite the length of time that has passed since the filing of the TAC.
However, even if that threshold were lowered, the Court's conclusion
would remain the same: Defendants have failed to show sufficient
prejudice to justify the Court's denying Plaintiffs' motion for leave
to amend.

delay the resolution of this dispute.  The Court disagrees.
First, while recognizing that allowing the Proposed RICO
and Antitrust Claims will require additional discovery
relating to those claims, the Court finds that such
discovery does not create undue prejudice at this
relatively early stage in the litigation.  Permitting a
party to amend its pleading will inevitably place some
additional burden on the opposing party, but "courts have
consistently held that such burden does not constitute
impermissible prejudice."  Sommer v. PMEC Assocs. & Co.,
No. 88 Civ. 2537, 1993 WL 361660, at *4 (S.D.N.Y. Sept. 14,
1993) (citing Morse/Diesel, Inc. v. Fidelity and Deposit
Co. of Md., 715 F.Supp. 578, 581 (S.D.N.Y. 1989),
International Bank v. Price Waterhouse and Co., 85 F.R.D.
140, 142 (S.D.N.Y. 1980)).

The cases cited by Defendants found undue prejudice
where parties had completed discovery and were "on the eve
of trial."  Portsmouth Baseball Corp. v. Frick, 21 F.R.D.
318, 319 (S.D.N.Y. 1958).  Here, the parties have completed
only preliminary discovery as to the "proper parties in
this action" and have not yet engaged in any significant
discovery on the merits.  October 2002 Order at *6.  Nor
does the fact that a summary judgment motion has been filed
in this case indicate that Defendants would suffer undue

prejudice if the Court granted the motion to amend.  The summary judgment motion pending before this Court is based on the preliminary issues rather than on the merits.

Second, the Court finds that allowing an amendment asserting the Proposed RICO and Antitrust Claims would not significantly delay the resolution of this matter.  In the primary case relied on by Defendants, the court denied a plaintiff's motion to amend where the case was "on the eve of resolution," H.L. Hayden Co. of N.Y., Inc. v. Siemens Medical Systems, Inc., 112 F.R.D. 417, 419 (S.D.N.Y. 1986). Such is not the case here, where the matter is in the preliminary stages of merits discovery and is nowhere near to being ready for trial.  See generally Dluhos v. Floating and Abandoned Vessel, known as "New York", 162 F.3d 63 (2d Cir. 1998) ("[I]t is unlikely that such an amendment would cause undue prejudice to any party given that the litigation did not appear to be anywhere near substantive resolution" when the motion to for leave to amend was made.)

Finally, Defendants also argue that granting Plaintiffs' motion for leave to amend would result in undue prejudice because the proposed claims would "dramatically change the nature of the case" against them.  This Court agrees with Plaintiffs, however, that the proposed

amendments are based on "substantially similar" allegations of misconduct regarding Defendants' "determining UCR reimbursements and [Defendants'] dealings with beneficiaries regarding such determinations." (Pls.' Reply 21.) While the Proposed RICO and Antitrust Claims are different in nature from Plaintiffs' earlier claims, they are substantially related to those claims, which are based primarily on ERISA, terms of the plans, contract law, and the New York Deceptive Trade Practices statute, and which seek declaratory, injunctive, and monetary relief. In the one case on which Defendants base their dramatic change argument, the plaintiffs sought to add RICO claims seeking $900 million in treble and punitive damages in a matter where the original complaint only sought an accounting and the imposition of a constructive trust. See Sommer v. PMEC Assocs. & Co., No. 88 Civ. 2735, 1993 WL 361660 (S.D.N.Y. Sept. 14, 1993). The original allegations and the proposed claims, and the forms of relief sought in both, are clearly more similar in nature here than they were in Sommer, and allowing the addition of the proposed claims would not dramatically change the nature of the case against Defendants.

The Court therefore finds that allowing the proposed amendments would not result in undue prejudice to the

Defendants.

E. Futility

In addition to undue delay, bad faith, and undue prejudice, a court may exercise its discretion to deny a party's motion to amend a pleading when the proposed amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is considered futile if it could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Riccuiti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). As the Second Circuit has explained, "the court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met." Id. (internal citation omitted). In applying this standard, a court must "read the facts alleged in the complaint in the light most favorable" to the non-moving party, and it must accept the allegations as true. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249 (1989).

Defendants assert that the proposed amendments are futile on multiple grounds. First, they argue that all of the proposed additional claims are time-barred for all

Plaintiffs.  Second, they argue that the proposed federal
RICO claims are futile because they fail to state a claim
on which relief can be granted.  Finally, Defendants argue
that all the proposed claims are futile as to the Provider
and Medical Association Plaintiffs because they are barred
by the doctrine of res judicata.  The Court finds that, to
the extent that the Proposed Antitrust and RICO Claims are
based on injuries that occurred after July 15, 2000, they
are not futile.

1. Whether the Proposed Amendments are Time-Barred

Defendants first assert that Plaintiffs' motion to add
the Proposed RICO Claims and the Proposed Antitrust Claims
should be denied as futile because both types of claims are
time-barred.  Plaintiffs counter with three arguments: that
their claim is not time-barred because they have suffered
harms under both antitrust and RICO laws within the statute
of limitations; that the applicable statutes of limitations
were tolled by Defendants' fraudulent concealment of their
activity; and that even if the claims are time-barred, they
are timely because they relate back to the March 15, 2000
initial Complaint.

a. Applicable Statutes of Limitations

Plaintiffs first assert that their antitrust and RICO
claims are timely because they are made within the

applicable statutes of limitations. The motion for leave to amend and the PFAC were filed on July 15, 2004.  Plaintiffs argue that their antitrust and RICO claims are not time-barred because they suffered actionable injuries within the four-year statute of limitations applicable to both antitrust and RICO claims -- that is, after July 15, 2000.

It is undisputed that the statute of limitations for both antitrust and civil RICO claims is four years.  See 15 U.S.C. § 15(b) (antitrust); Agency Holding Corp. v. Malley-Duff Assocs., Inc., 483 U.S. 143, 156 (1987) (RICO).  The parties do dispute, however, whether any of the harms allegedly suffered by the Plaintiffs since July 15, 2000 are sufficient to trigger the commencement of the four-year limitations period.

Defendants argue that the Proposed Antitrust Claims "are time-barred because plaintiffs knew or should have known of the alleged injuries prior to four years from the filing of the Motion [f]or Leave [t]o Amend, or July 15, 2000."  (Defs.' Mem. in Opp. 29 (emphasis in original).)  But the Supreme Court has held that, under antitrust law,

> in the case of a "continuing violation," say a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, "each overt act that is part of the violation and that injures the plaintiff," e.g., each sale to the plaintiff, "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged

<u>illegality at much earlier times</u>."

<u>Klehr v. A.O. Smith Corp.</u>, 521 U.S. 179, 189 (1997) (emphasis added)(citation omitted).  Whether a plaintiff knew or should have known of an alleged antitrust injury therefore does not affect the commencement of the statute of limitations period under antitrust law: the limitations period begins afresh with "each overt act that is part of the violation and that injures the plaintiff."  *Id.*

Here, Plaintiffs allege that they have been harmed by "hundreds of intentionally false UCR determinations" as a result of Defendants' ongoing antitrust scheme. (PFAC ¶ 146.)  Several, but not all, of the "brief examples" of such harms cited in the PFAC occurred after July 2000. (PFAC ¶¶ 147-180.)  The alleged harms that occurred after July 15, 2000 include, <u>inter alia</u>, "false UCR reimbursement determinations" and explanations of benefits "containing misrepresentations and omissions regarding [Defendants'] use of the UCR Databases." (PFAC ¶¶ 151, 154.)  These suffice to allege overt acts that are part of a continuing antitrust violation.  The Proposed Antitrust Claims based on overt acts that occurred after July 15, 2000 are therefore not time-barred, and the proposed amendment to include them is not futile on the basis of the four-year statute of limitations.

Defendants' argument that the Proposed RICO Claims
"are time-barred because plaintiffs knew or should have
known of the alleged injuries prior to four years from the
filing of the Motion For Leave To Amend" potentially is
more persuasive because the limitations period for civil
RICO claims begins to run "when the plaintiff discovers or
should have discovered the RICO injury."  Tho Dinh Tran v.
Alphonse Hotel Corp., 281 F.3d 23, 35 (2d Cir. 2002)
(quoting In re: Merrill Lynch P'ships Litig., 154 F.3d 56,
58 (2d Cir. 1998)).  As Defendants point out, Plaintiffs'
original Complaint, which was filed on March 15, 2000 (over
four years prior to the filing of the PFAC with the
Proposed RICO Claims), expressed actual knowledge of
injuries that occurred well before July 15, 2000.  The
Proposed RICO Claims are therefore time-barred unless they
fall within this Circuit's "separate accrual rule" for
civil RICO violations.

Under this rule, a "new claim accrues and the four-
year limitation period begins anew each time a plaintiff
discovers or should have discovered a new and independent
injury."  In re Merrill Lynch Ltd. Partnerships Litig., 154
F.3d 56, 59 (2d Cir. 1998).  "[T]he separate accrual rule
of this Circuit is potentially implicated in any RICO case
where multiple injuries occur over an extended period of

time." National Group for Communications and Computers Ltd. v. Lucent Technologies, Inc., 420 F.Supp.2d 253, 265 (S.D.N.Y. 2006). The separate accrual rule is triggered only if the injury is "new and independent," In re Merrill Lynch, 154 F.3d at 59, and "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." Klehr v. A.O. Smith Corp., 521 U.S. 179, 181 (1997).

In the case announcing the Second Circuit's separate accrual rule, the Court of Appeals found that a separate cause of action had accrued based on the defendants' fraudulently concealing the assets of a bankruptcy estate and instituting frivolous lawsuits. Bankers Trust Co. v. Rhoades, 859 F.2d 1096 (2d Cir. 1988). These actions constituted "new and independent" injuries separate and apart from the loss of the debt itself. Id. at 1103. Similarly, in Bingham v. Zolt, the Court of Appeals held that the separate accrual rule applied where the defendants had diverted and concealed assets from Bob Marley's estate over a period of many years. Bingham v. Zolt, 66 F.3d 553 (2d Cir. 1995). Although several wrongful acts, including the fraudulent transfer of assets and contract rights, had occurred more than four years before the suit, the Bingham

Court found new and independent injuries in subsequent "frequent misappropriations of discrete amounts of money from different sources." Id. at 561. Thus, "each illegal diversion constituted a new and independent legally cognizable injury to the estate," thereby rendering the plaintiffs' civil RICO claim "timely with respect to all diversions occurring within four years of suit." Id.

Courts have declined to apply the rule of separate accrual in the absence of "new and independent" injuries. In In re Merrill Lynch, for instance, the plaintiff investors alleged that certain partnerships in which they had invested "were fraudulent at the outset" but that their claims, though brought more than four years after investing in the partnerships, were not barred because of the rule of separate accrual. In re Merrill Lynch, 154 F.3d at 59. They argued that "the dissemination of allegedly misleading reports and other communications and the collection of annual fees" constituted "new and independent" injuries. Id. The Court of Appeals found, however, that the later communications were "continuing efforts to conceal the initial fraud, and not separate and distinct fraudulent acts resulting in new and independent injuries." Id. at 59-60. Similarly, in Long Island Lighting Co. v. Imo Industries, Inc. ("LILCO"), the Second Circuit found that

the RICO injury had occurred at the time Plaintiffs knew or
should have known of a design defect in the generators they
had purchased, and that the later failure of the generators
and consequent financial losses did not give rise to a new
and independent RICO claim.   Long Island Lighting Co. v.
Imo Industries, Inc., 6 F.3d 876 (2d Cir. 1993).

   Although "[t]he In re Merrill Lynch decision confirms
that, in at least some cases, injuries are not 'new and
independent' when they are attributable to a common
scheme," National Group, 420 F.Supp.2d at 256, the In re
Merrill Lynch Court explicitly recognized that "in some
instances a continuing series of fraudulent transactions
undertaken within a common scheme can produce multiple
injuries which each have separate limitations periods." In
re Merrill Lynch, 154 F.3d at 59 (citing Bingham v. Zolt,
66 F.3d 553, 559-61 (2d Cir. 1995)).   This is such a case.
The injuries alleged to have occurred since July 15, 2000 –
- including "false UCR reimbursement determinations" and
explanation of benefits "containing misrepresentations and
omissions regarding [Defendants'] use of UCR Databases" --
are similar to the ongoing illegal diversions in Bingham.
(PFAC ¶¶ 151, 154.)   While In re Merrill Lynch, like this
case, involved allegedly fraudulent mailings and
statements, there the actual injury occurred once: it

resulted from the initial investment in the fraudulent
partnerships, not from "the dissemination of allegedly
misleading reports and other communications and the
collection of annual fees."  In re Merrill Lynch, 154 F.3d
at 59.  Here, the alleged injuries occurred each time the
Defendants made a "false UCR reimbursement
determination[]," and these multiple injuries cannot be
said to have resulted from one initial event. (PFAC ¶ 151.)
Rather, they are "new and independent" injuries within the
meaning of the Second Circuit's rule of separate accrual.

This Court finds, therefore, that Plaintiffs' Proposed
RICO Claims that are based on UCR benefit determinations
rendered after July 15, 2000, are not time-barred.  Any
RICO claims based on injuries that occurred before July 15,
2000, however, are time-barred.[11]  See Bingham, 66 F.3d at
560 ("Pursuant to [the rule of separate accrual], a
plaintiff who is continuously injured by an underlying RICO
violation may only recover for injuries discovered or
discoverable within four years of the time suit is
brought.").  Because each of the Proposed RICO Claims seems
to allege injuries that occurred after July 15, 2000, leave
to amend to add those claims will not be denied as futile

---

[11] They are time-barred unless they were fraudulently concealed or they
relate back to the filing of the original complaint.  See discussion
infra Sections II.E.1.b-c.

on statute of limitations grounds.

b. Fraudulent Concealment

Plaintiffs further argue that the Proposed RICO and Antitrust Claims are not time-barred because they were fraudulently concealed.[12]  In both antitrust and civil RICO actions, a plaintiff must allege three elements in order to toll the statute of limitations on the basis of fraudulent concealment: (1) that the defendant concealed the existence of the plaintiff's cause of action; (2) that the concealment prevented the plaintiff from discovering that cause of action within the statute of limitations period; and (3) that the plaintiff diligently attempted to discover the claims during the statute of limitations period.  See State of New York v. Hendrickson Brothers, Inc., 840 F.2d 1065, 1083 (2d Cir. 1988) (for antitrust claims); Corcoran v. New York Power Auth., 202 F.3d 530, 543 (2d Cir. 1999) (for RICO claims).

Allegations of fraudulent concealment, like other allegations of fraud, must be pleaded with particularity in accordance with Fed. R. Civ. P. 9(b).  See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566 (2d

---

[12] The Court must address Plaintiffs' argument that their claims are not time-barred on the basis of fraudulent concealment in order to ascertain to what extent injuries alleged to have occurred prior to July 15, 2000 -- outside the applicable four-year statute of limitations -- may form a basis for Plaintiffs' Proposed Antitrust and RICO claims.

Cir. 2005) (per curiam).  In the PFAC, Plaintiffs allege that "[a]s a result of Defendants' fraudulent concealment, the applicable statutes of limitations have been tolled and have not begun to run."  (PFAC ¶ 209.)  The Court agrees with Defendants that such conclusory statements are insufficient to satisfy Rule 9(b)'s pleading requirements.

Plaintiffs argue that they have satisfied the first element, concealment of the cause of action, and rightly note that the Second Circuit recognizes certain enterprises as self-concealing.  State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988).  They direct the Court to sections of the PFAC alleging that United Healthcare concealed Plaintiffs' causes of action.  But while the PFAC may sufficiently state the first element of fraudulent concealment, it does not allege -- much less allege with particularity -- the second or third elements of such a claim.  Because Plaintiffs have not satisfied Rule 9(b) with regard to whether Defendants' concealment prevented Plaintiffs from discovering their causes of action and to whether Plaintiffs exercised due diligence in seeking to uncover those causes of action, Plaintiffs' argument that the statute of limitations was tolled by fraudulent concealment fails.

c. Relation Back

Plaintiffs further argue that their claims are not time-barred because they relate back to the filing of the original complaint.[13]  Fed. R. Civ. P. 15(c) governs whether a plaintiff should be permitted to amend a pleading to include claims that would be time-barred if brought in a separate action.  Under Rule 15(c), "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c).  In analyzing a Rule 15(c) argument, the court must inquire "whether the facts provable under the amended complaint arose out of the conduct alleged in the original complaint."  Salyton v. American Exp. Co., 460 F.3d 215, 227 (2d Cir. 2006).

The Court of Appeals has repeatedly instructed that the primary consideration is "whether the original complaint gave the defendant fair notice of the newly alleged claims."  Wilson v. Fairchild Republic Co., 143 F.3d 733, 738 (2d Cir. 1998).  "If the facts in the

---

[13] Again, although Plaintiffs' Proposed RICO and Antitrust Claims are not barred by the statute of limitations to the extent that they arise from injuries incurred after July 15, 2000, the Court must nonetheless address whether those proposed claims relate back to the original complaint in order to ascertain whether Plaintiffs may recover under antitrust and RICO law on the basis of injuries sustained before July 15, 2000.  Because Plaintiffs failed to adequately allege fraudulent concealment, any such claims are time-barred unless they relate back to the original complaint.

original pleading do not provide defendant with notice of facts out of which the time-barred claim arises then relation back is inappropriate." <u>106 Mile Transport Associates v. Koch</u>, 656 F.Supp. 1474 (S.D.N.Y. 1987).  In cases "where a revised pleading contains alternative theories based on the same core facts as presented in a prior pleading, the alternative pleadings relate back to the original." <u>Wells v. Harris</u>, 185 F.R.D. 128, 131 (D. Conn. 1999).  However, "courts have declined to apply the relation back doctrine to allow the addition of new claims for relief based on transactions or events not included in the original pleading." <u>Grace v. Rosenstock</u>, 169 F.R.D. 473, 481 (E.D.N.Y. 1996), aff'd, 228 F.3d 40 (2d Cir. 2000) (citing cases).  Therefore "'[a]n amendment which states an entirely new claim for relief based on different facts will not relate back.'" <u>Forzley v. AVCO Corp. Electronics Division</u>, 826 F.2d 974, 981 (11th Cir. 1987) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.15[3] at 15-147 to 149 (2d ed. 1985)).

The issue here is therefore whether the Proposed Antitrust and RICO Claims are "based on the same core facts" as those alleged in the Original Complaint -- thereby demonstrating that Defendants had adequate notice within the statutory period -- in which case they relate

back, or are "based on transactions or events not included

in the original pleading," in which case they do not relate

back under Rule 15(c).  <u>Wells</u>, 185 F.R.D. at 131; <u>Grace</u>,

169 F.R.D. at 481.

Plaintiffs assert that the original Complaint, which

alleged violations of ERISA, contract law, and the New York

Deceptive Trade Practices statute, provided notice of the

core facts that now form the basis for Plaintiffs' Proposed

RICO and Antitrust Claims because the original Complaint

"alleged numerous acts of misconduct by United Healthcare

. . . in applying the PHCS database to make reduced UCR

determinations, and the misrepresentations made by United

Healthcare in informing beneficiaries of the reduced UCR

determinations." (Pls.' Reply 34.)  In essence, Plaintiffs

argue that "once Plaintiffs identified in the original

Complaint the misconduct and the most tangible and obvious

injuries resulting from it, United Healthcare was put on

notice that all of the underlying reasons and actions

leading to such misconduct were at issue." (Pls.' Reply

35.)

The Court agrees, however, with Defendants that the

original Complaint does not include facts that form the

core of the Plaintiffs' Proposed Claims.  While the

original Complaint alleges important facts relating to the

harm of Defendants' alleged misconduct, it does not include
reference to -- and therefore does not provide any
meaningful notice to Defendants of -- most of the facts
that are key to both the Proposed Antitrust and the
Proposed RICO Claims.  The original Complaint alleges basic
facts relating to the HIAA and the PHCS database, but it
does not mention the MDR, the other database at issue in
the PFAC.  (Compl. ¶¶ 31-38.)  Even reading the allegations
generously, the Court finds that the Proposed Antitrust and
RICO Claims are primarily "based on transactions or events
not included in the original pleading."  <u>Grace</u>, 169 F.R.D.
at 481.  They therefore do not relate back to the original
Complaint within the meaning of Rule 15(c).

Plaintiffs' Proposed Antitrust and RICO Claims that
are based on injuries that occurred before July 15, 2000,
are time-barred and therefore futile.  However, because the
Proposed Claims all seem to rely at least in part on
injuries sustained by Plaintiffs after July 15, 2000,
Plaintiffs' motion for leave to amend will not be denied as
futile on the basis of the statute of limitations.

<u>2. Whether the Proposed RICO Claims State a Claim</u>

United Healthcare argues that Plaintiffs' motion for
leave to file the Proposed RICO Claims should be denied as
futile because "plaintiffs have failed sufficiently to

state a RICO claim upon which relief can be granted."
(Defs.' Mem. in Opp. 38.) As discussed above, "a proposed
amendment to a pleading [is] futile if it could not
withstand a motion to dismiss pursuant to 12(b)(6)."
Riccuiti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d
Cir. 1991). "Dismissal of a civil RICO complaint for
failure to state a claim is only appropriate when it is
clear that no relief could be granted under any set of
facts that could be proved consistent with plaintiff's
allegations." Commercial Cleaning Services, LLC v. Colin
Service Systems, Inc., 271 F.3d 374, 380 (2d Cir. 2001).

Under the federal RICO statute, it is "unlawful for
any person employed by or associated with any enterprise
engaged in, or the activities of which affect, interstate
or foreign commerce, to conduct or participate, directly or
indirectly, in the conduct of such enterprise's affairs
through a pattern of racketeering activity." 18 U.S.C. §
1962(c).[14] In order to sufficiently plead a civil RICO
claim, "a plaintiff must show that he was injured by
defendants' (1) conduct (2) of an enterprise (3) through a
pattern (4) of racketeering activity." Cofacredit, S.A. v.

[14] The Proposed RICO Claims include four counts alleging violations of
federal RICO law and one count alleging, on behalf of plaintiffs who
reside in Florida, violations of the Florida RICO Act, 895.01 et seq.
Defendants' arguments in opposition to Plaintiffs' motion for leave to
file an amended complaint address only the federal RICO claims, so the
Court here confines its analysis to whether Plaintiffs' proposed
federal RICO claims state a claim upon which relief may be granted.

<u>Windsor Plumbing Supply Co.</u>, 187 F.3d 229, 242 (2d Cir. 1999) (internal quotation omitted).  <u>See</u> <u>also</u> <u>Sedima,</u> <u>S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).

Defendants argue that "plaintiffs have failed sufficiently to plead the 'enterprise' and 'conduct' elements of a RICO claim." (Defs.' Mem. in Opp. 40.) Although Plaintiffs may face challenges in presenting sufficient evidence to carry their burden of proof as to these two elements of their Proposed RICO Claims, at this stage all Plaintiffs need do is adequately plead those elements.  Plaintiffs have sufficiently alleged both the conduct and the enterprise elements here, and their motion to assert the Proposed RICO Claims will not be denied as futile for failure to state a claim.

a. The "Conduct" Element

In order to state a RICO claim, a plaintiff must allege that the defendants conducted the affairs of the enterprise.  <u>Cofacredit</u>, 187 F.3d at 242. Defendants argue that Plaintiffs' motion to amend should be denied because Plaintiffs failed to adequately allege that United Healthcare "conducted" the affairs of the alleged Out-of-Network enterprise.

The Supreme Court has explained that "[i]n order to 'participate, directly or indirectly, in the conduct of

such enterprise's affairs,' one must have some part in directing those affairs," and, although "RICO liability is not limited to those with a formal position in the enterprise," "some part in directing the enterprise's affairs is required." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).  Specifically, the Court held that "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." Id.  In the Second Circuit, this "'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." First Capital Asset Management v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004)(internal citations omitted).

Defendants first argue that Plaintiffs have failed to surmount this hurdle because "Defendants are not alleged to have played any role in 'directing' the conduct of the alleged Out-of-Network Reimbursement Enterprise' . . ." (Defs.' Mem. in Opp. 47.)  But Plaintiffs satisfy the Reves standard by alleging that Defendants, "in concert with the HIAA Group, . . . manipulat[ed] the UCR Databases" using a variety of methods. (PFAC ¶¶ 129-133.)  Such actions constitute "operation or management" of the enterprise's affairs and therefore satisfactorily allege the conduct

element of the Proposed RICO claims.

Second, Defendants argue that Plaintiffs have failed to allege the conduct element of the Proposed RICO Claims because Plaintiffs' "claims solely allege that Defendants perpetrated a fraud on plaintiffs in the course of conducting their own affairs, and not the affairs of any alleged 'enterprise.'" (Defs.' Mem. in Opp. 47 (emphasis in original).)  Defendants rely principally on Reves, in which the Supreme Court held that to satisfy the "conduct" requirement in a RICO claim the defendant must be alleged to have played a role in directing the affairs "of the enterprise itself." Reves, 507 U.S. at 179.

In Reves, the defendant, an accountant, was an outsider who had not participated in the operation or management of the enterprise.  Similarly, in other cases cited by Defendants, the defendants were not in a position to direct the affairs of the enterprise.  See Brannon v. Boatmen's First National Bank of Okla., 153 F.3d 1144, 1149 (10th Cir. 1998) (declining to hold a subsidiary liable for the acts of its parent corporation); Dubai Islamic Bank v. Citibank, 256 F.Supp.2d 158, 164 (S.D.N.Y. 2003) (finding that the plaintiffs had failed to adequately allege "conduct" of the enterprise based on the defendant bank's employees' alleged participation in a customer's money-

laundering scheme); Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995) (holding that the defendants had not conducted the enterprise where "[n]ot one of the non-defendant entities, supposedly constituent parts of the 'enterprise,' is described as playing a role in the forced placed insurance that allegedly was foisted on the used car purchaser-victim."). None of these circumstances bears any similarity to the case at hand, where Plaintiffs allege that Defendants controlled and manipulated the UCR Databases. The Court finds, therefore, that Plaintiffs have sufficiently pled the "conduct" element of their Proposed RICO Claims.

b. The "of an Enterprise" Element

Second, Defendants assert that Plaintiffs have failed to state a claim under the RICO statute because they have not sufficiently alleged the "enterprise" element. Under the RICO statute, an enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has further explained that an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S.

576, 583 (1981).  The existence of such an enterprise is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Id. See also First Capital Asset Management, Inc. v. Satinwood, 385 F.3d 159 (2d Cir. 2004).

Moreover, as the Turkette Court explained, "[t]he enterprise is not the 'pattern of racketeering activity'; it is an enterprise separate and apart from the pattern of activity in which it engages." Turkette, 452 U.S. at 583 (internal citation omitted).  In applying the Turkette standard, the Second Circuit has looked for information about an alleged association-in-fact enterprise's "hierarchy, organization, and activities" that could support the conclusion that the enterprise's members functioned as a unit.  First Capital Asset Management, Inc., 385 F.3d at 174 (citing U.S. v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991), cert. denied, 503 U.S. 941 (1992)).[15]

---

[15] The extent to which an alleged enterprise must have a structure and organization separate and apart from the predicate acts it is alleged to have engaged in is a somewhat open question in this Circuit.  For a detailed analysis of the Second Circuit precedents on this issue and the district court cases construing them, see World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 425 F.Supp.2d 484, 493-500 (S.D.N.Y. 2006).  The World Wrestling Court found that First Capital Asset Management, Inc., 385 F.3d 159 (2d Cir. 2004), had not overruled United States v. Mazzei, 700 F.2d 85, 89 (2d Cir. 1988), an earlier precedent that held that the "enterprise" and "pattern of racketeering"

Defendants argue that Plaintiffs failed to allege a
RICO enterprise for multiple reasons.  First, Defendants
assert that Plaintiffs "failed to allege an enterprise with
any structure separate and apart from the alleged 'pattern
of racketeering activity.'" (Defs.' Mem. in Opp. 42.)  The
Court disagrees.  Unlike the alleged enterprises discussed
in the cases cited by Defendants, here Plaintiffs have
alleged that "[t]he Out-of-Network Enterprise has and
continues to have an ascertainable structure and function
separate and apart from the pattern of racketeering
activity."  (PFAC ¶ 249.)  In particular, Plaintiffs direct
the Court to several paragraphs in their Proposed
Amendments that detail the composition of the HIAA Group
and the structure of the relationship between the HIAA
Group and United Healthcare, including the "Cooperation
Agreement" governing the sale of the PHCS database from
HIAA to Ingenix (one of the Defendants) and the ongoing
interactions between these parties over a period of several
years.[16]  (See PFAC ¶¶ 3-4, 7-8, 110-111.)

---

elements were not required to be "distinct and independent, as long as
the proof offered is sufficient to satisfy both elements." World
Wrestling, 385 F.3d at 495.  The World Wrestling Court therefore found
that the plaintiffs had adequately pled the "enterprise" element of
their RICO claim even though their complaint "d[id] not allege a RICO
enterprise that has an ascertainable structure beyond the purported
racketeering acts."  Id. at 494.  Because the enterprise alleged here
satisfies the more stringent First Capital standard in addition to the
the Mazzei standard, the Court need not address which standard governs.
[16] The Court notes that the HIAA Group is not specifically mentioned in

The Court agrees with Plaintiffs' argument that these allegations reflect, <u>inter alia</u>, the alleged Out-of-Network Enterprise's "interfacing of [its] management and information systems," its "affiliations and contacts through co-membership in associations and industry organizations and committees," and its governance by "specific benefit plan documents." (Pls.' Reply 40-41.) These are separate and apart from the pattern of racketeering activity in which United Healthcare is alleged to have engaged.

Second, United Healthcare argues that Plaintiffs have failed to allege an "ongoing unit," instead only alleging that the "alleged participants are all involved in the insurance industry and all have some connection with the PHCS and MDR databases." (Defs.' Mem. in Opp. 42.)  The PFAC alleges, however, that the Out-of-Network Enterprise members, including the HIAA Group, interacted over a period

---

the description of the Out-of-Network Enterprise's members and that Plaintiffs' citations to the Proposed Amendment's references to the HIAA Group are drawn from sections of the Proposed Amendment involving background information and the Proposed Antitrust Claims rather from the section involving the Proposed RICO Claims.  However, as Plaintiffs note, the "users of [the] UCR databases" who are alleged to be members of the Out-of-Network Enterprise include "insurance companies who are members of the HIAA Group." (Proposed Amendment ¶ 247, Pls.' Reply 38.) While this link seems to be somewhat attenuated, under the Fed. R. Civ. P. 12(b)(6) standard applicable at this stage the Court must "read the facts alleged in the complaint in the light most favorable" to the Plaintiff. <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 249 (1989). The Court therefore accepts Plaintiffs' allegations concerning the HIAA Group as relating to, and alleging facts regarding the existence of, the Out-of-Network Enterprise.

of years by contributing data, coordinating information, and maintaining contacts with each other in order to manipulate data maintained in the UCR databases.  This is sufficient to allege an "ongoing unit" for purposes of allowing Plaintiffs to plead their Proposed RICO Claims.

Nor are these, as Defendants further argue, mere "vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure."  Stachon v. United Consumers Club, Inc., 229 F.3d 673, 676 (7th Cir. 2000).  Rather, these allegations, taken in concert and read in the light most favorable to Plaintiffs, describe specific participants with multiple interactions and an ascertainable structure.  As such, these allegations adequately plead an association-in-fact enterprise.[17]

Therefore the Court finds that Plaintiffs adequately plead a RICO enterprise.  Plaintiffs' Proposed RICO Claims, which are based on an alleged enterprise involving United Healthcare, users of its UCR databases (including the  HIAA Group), and entities whose insurance healthcare plans are

_____

[17] United Healthcare also argues that Plaintiffs' alleged association-in-fact enterprise fails because the members are competitors and therefore cannot be "associated together for a common purpose." (Defs.' Mem. in Opp. 43 (citing Turkette, 452 U.S. at 583).)  This contention is without merit: Plaintiffs clearly allege a common purpose for the alleged enterprise -- using the databases to depress UCR reimbursement rates -- that is not inconsistent with the fact that members of the alleged enterprise may "compete against one another for consumers in the insurance industry." (Id.)

administered by United Healthcare, sufficiently allege the existence of "a group of persons associated together for a common purpose of engaging in a course of conduct" which may be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583.

While Plaintiffs may face challenges in proving the conduct and enterprise elements, the Court of Appeals has instructed that "[d]ismissal of a civil RICO complaint for failure to state a claim is only appropriate when it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiff's allegations." Commercial Cleaning Services, LLC v. Colin Service Systems, Inc., 271 F.3d 374, 380 (2d Cir. 2001). The Court finds, therefore, that Defendants have failed to demonstrate that Plaintiffs' motion for leave to amend should be denied as futile for failure to state the "conduct" and "enterprise" elements of the Proposed RICO Claims.

3. Whether the Provider and Medical Association Plaintiffs' Claims Are Barred by Res Judicata

In a supplementary submission, Defendants argue that "all of the proposed amended claims of the Provider and

Medical Association Plaintiffs are barred by the doctrine of res judicata." Defendants assert that, for those plaintiffs, the proposed RICO and antitrust claims are precluded by the recent decision of the United States District Court for the Southern District of Florida granting summary judgment to the defendants in In re Managed Care Litigation, 430 F.Supp.2d 1336 (S.D. Fla. 2006) ("MCL"). (Defs.' Notice of Supp. Auth. 2.)

a. The MCL Litigation

    MCL was a class action by certain physicians and medical associations against various health maintenance organizations (HMOs), including United Healthcare, encompassing several individual lawsuits that were consolidated by a multi-district litigation panel.[18]  The MCL plaintiffs alleged that various HMOs had conspired with each other and with McKesson Corporation ("McKesson"), which is "the dominant source for code editing software in the healthcare industry," to defraud physicians by manipulating data using the "current procedural terminology" ("CPT") coding system.  MCL, 430 F.2d at 1341. Under the CPT system, physicians who have not entered a contractual relationship with an HMO claim reimbursement for treating patients for medically necessary procedures by

_____

[18] The multi-district litigation panel declined to include this case in the consolidated MCL litigation.

submitting standardized forms that incorporate the CPT coding system. <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1247 (11th Cir. 2004).[19]

Specifically, the <u>MCL</u> plaintiffs asserted that the defendants and other co-conspirators conspired to manipulate fee-for-service payments by "denying, downcoding, and bundling the CPT codes the doctors submit and by refusing to recognize modifiers." <u>MCL</u>, 430 F.Supp.2d at 1341. The heart of the plaintiffs' theory was that various HMOs conspired with McKesson to "develop[] automatic systems for editing and manipulating the CPT claims information submitted by doctors" in order to "deny or diminish payments to the doctors." <u>Id.</u> at 1343.  The plaintiffs brought a RICO conspiracy claim, arguing that the alleged agreement between the HMOs and McKesson violated 18 U.S.C. § 1962(d), and a RICO aiding and abetting claim based on 18 U.S.C. § 2.  <u>Id.</u>  In addition, the <u>MCL</u> plaintiffs sought declaratory and injunctive relief related to these alleged RICO violations.  <u>Id.</u>

The <u>MCL</u> court granted summary judgment to the

---

[19] <u>Klay v. Humana</u>, 382 F.3d 1241 (11th Cir. 2004), is an earlier incarnation of the case that was later designated as <u>MCL</u>.  In the summary judgment decision asserted to create preclusive effect here, the <u>MCL</u> court referenced <u>Klay</u> as providing "a more detailed factual and procedural background of this multidistrict litigation."  <u>MCL</u>, 430 F.Supp.2d 1336, 1340 (S.D. Fla. 2006).

defendants,[20] holding that the "evidence proffered by the
Plaintiffs is insufficient to allow a jury to find
reasonably that the Defendants conspired to manipulate
their claims processing software to systematically underpay
doctors."  Id. at 1344.  Specifically, the court found that
the plaintiffs had failed to present sufficient evidence of
agreement between the defendant HMOs and McKesson,
rejecting the plaintiffs' arguments that such agreement was
demonstrated by the defendants' parallel conduct.  Id. at
1349.  Because the plaintiffs had failed to show an
agreement, and therefore failed to establish an essential
component of their conspiracy claim, the court held that
the defendants were entitled to summary judgment on all
counts.  Id. at 1357.

b.  Res Judicata Effect of the MCL Decision

        A motion to amend a complaint should be denied as
futile if the proposed causes of action would be barred by
res judicata, a doctrine also known as claim preclusion.
See, e.g., Cuban v. Kapoor Bros., Inc., 653 F.Supp. 1025,
1033 (E.D.N.Y. 1986).  Under this doctrine, "a final
judgment on the merits of an action precludes the parties
or their privies from relitigating issues that were or

_____

[20] Various other defendant HMOs had reached settlements with the
plaintiffs or otherwise been dismissed from the action, so at the time
of the MCL summary judgment decision at issue here only two defendants,
United Healthcare and Coventry Health Care, Inc., remained.

could have been raised in that action." Allen v. McCurry,
449 U.S. 90, 94 (1980). See also Monahan v. New York City
Dep't of Corrections, 214 F.3d 275 (2d Cir. 2000), cert.
denied, 531 U.S. 1035 (2000). "Even claims based upon
different legal theories are barred provided they arise
from the same transaction or occurrence." LTec Elec. Corp.
v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999)
(per curiam).

To determine whether the doctrine of res judicata
precludes a party from asserting a claim in a subsequent
litigation, courts inquire whether "(1) the previous action
involved an adjudication on the merits; (2) the previous
action involved the plaintiffs or those in privity with
them; [and] (3) the claims asserted in the subsequent
action were, or could have been, raised in the prior
action." Monahan, 214 F.3d at 285.[21]

1. Whether There Has Been an Adjudication on the Merits

---

[21] The Plaintiffs articulate a slightly different test for whether res
judicata applies, relying on the four-prong inquiry established by the
Second Circuit in Corbett v. MacDonald Moving Services, Inc., 124 F.3d
82, 88 (2d Cir. 1997) (The court must inquire whether "1) the prior
decision was a final judgment on the merits, 2) the litigants were the
same parties, 3) the prior court was of competent jurisdiction, and 4)
the causes of action were the same."). While this test is
substantially similar to the three-step analysis set forth in Monahan
v. New York City Dep't of Corrections, 214 F.3d 275 (2d Cir. 2000), it
should be noted that the Court applies the Monahan articulation of the
res judicata inquiry because the Corbett version is specific to
bankruptcy proceedings. See In re Layo, 460 F.3d 289, 292 (2d Cir.
2006) ("In Corbett, we set forth the test for res judicata in
bankruptcy proceedings involving a plan of reorganization.").

Plaintiffs argue that the Southern District of Florida's decision granting summary judgment is not a final judgment on the merits because appeal of that judgment is currently pending before the Eleventh Circuit Court of Appeals.[22] (Pls.' Resp. to Defs.' Notice of Suppl. Auth. 3.) Plaintiffs rely on several cases holding that failure to appeal a judgment results in that judgment's having res judicata effect, apparently on the logic that if a non-appealed judgment has such effect, an appealed judgment does not. (Id. at 3 (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398-401 (1981), Brotherhood of Maintenance of Way Employees v. St. Johnsbury & Lamoille County Railroad/M.P.S. Associates, Inc., 806 F.2d 14, 15-16 (2d Cir. 1986).)

It is well-settled federal law, however, that an appealed judgment is a final adjudication on the merits for res judicata purposes even when that appeal is pending. See Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir. 1988) ("Of course, the determination of the state supreme court . . . is entitled to res judicata effect, even though the city may be appealing that determination."). See also

---

[22] The Plaintiffs draw the language "a final judgment on the merits" from the Corbett Court's statement of the res judicata standard. See Corbett, 124 F.3d at 88. The res judicata standard followed here, as discussed supra n.22, is taken not from Corbett but from Monahan, which uses the language "an adjudication on the merits" rather than "a final judgment on the merits." Monahan, 214 F.3d at 285.

Moore's Federal Practice ¶18A at 4433 ("[A] final judgment
retains all res judicata consequences pending decision of
the appeal."); Alamance Industries v. Gold Medal Hosiery
Co., 194 F.Supp. 538, 540 (S.D.N.Y. 1961) ("Pendency of an
appeal does not render the other judgments less final or
binding.").

It is undisputed that a grant of summary judgment
constitutes a final judgment on the merits, and the
pendency of an appeal from that judgment does not alter its
res judicata effects.  The Court finds, therefore, that the
MCL decision is an adjudication on the merits for res
judicata purposes.

2. Whether the Litigants Are the Same Parties or Their
Privies

In addition to being an adjudication on the merits, in
order for res judicata to apply the prior decision must
have involved "the plaintiffs or those in privity with
them."  Monahan, 214 F.3d at 285.  Under the law of this
circuit, "literal privity is not a requirement for *res
judicata* to apply."  Id. (citation omitted).  Rather, "a
party will be bound by a previous judgment if his
'interests were adequately represented by another vested
with the authority of representation.'"  Id. (citing
Alpert's Newspaper Delivery, Inc. v. The New York Times

Co., 876 F.2d 266, 270 (2d Cir. 1989)).

The plaintiffs in the MCL litigation were a class of physicians "who submitted fee-for-service claims to at least one of the Defendants or alleged co-conspirator health maintenance organizations" and medical associations who sought relief on their own behalf and on behalf of their members. MCL, 430 F.Supp.2d at 1340. At an earlier stage in the same litigation, the Eleventh Circuit Court of Appeals characterized the case as involving "almost all doctors versus almost all major health maintenance organizations." Klay, 382 F.3d at 1246.

Defendants here assert their res judicata defense against only certain categories of plaintiffs: Provider Plaintiffs and Medical Association Plaintiffs. Those Plaintiffs do not contest that they were either the plaintiffs or in privity with the plaintiffs in the MCL litigation. For this reason, and because of the broad and inclusive nature of the MCL plaintiff class and the likelihood that the interests of Plaintiffs here were adequately represented in that case, the Court finds the second prerequisite to a finding of res judicata to be satisfied here.

3. Whether the Claims Asserted Here Were or Could Have Been Raised in MCL

While the first two requirements for res judicata have
been satisfied, in order for res judicata to preclude the
Provider and Medical Association Plaintiffs' claims the
Defendants must also show that these claims "were, or could
have been, raised in the prior action."  Monahan, 214 F.3d
at 285.  As the Court of Appeals has instructed,

> In determining whether a second suit is barred by this
> doctrine, the fact that the first and second suits
> involved the same parties, similar legal issues,
> similar facts, or essentially the same type of
> wrongful conduct is not dispositive.  Rather, the
> first judgment will preclude a second suit only when
> it involves the same "transaction" or connected series
> of transactions as the earlier suit; that is to say,
> the second cause of action requires the same evidence
> to support it and is based on facts that were also
> present in the first.

Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir.
1997) (citation omitted).  Thus "[w]hether or not the first
judgment will have preclusive effect depends in part on
whether the same transaction of series of transactions is
at issue, whether the same evidence is needed to support
both claims, and whether the facts essential to the second
were present in the first."  NLRB v. United Technologies
Corp., 706 F.2d 1254, 1260 (2d Cir. 1983).

Defendants argue that res judicata applies because the
Proposed RICO and Antitrust Claims asserted here "were
litigated to a final judgment" in MCL.  Alternatively,
Defendants argue that res judicata applies because "even if

the plaintiffs in the prior litigation did not make claims related to the PHCS or HIAA database – which they did – In re Managed Care Litigation would still be preclusive" because the MCL plaintiffs "could have raised the database to support their claims in the first action." (Defs.' Reply to Suppl. Auth. 5.)[23]

There are substantial similarities between the MCL litigation and the proposed claims of the Provider and Medical Association Plaintiffs in this case.  The MCL Court's broad characterization of its holding -- that the plaintiffs had failed "to demonstrate a triable issue of fact regarding whether the Defendants conspired to defraud doctors by manipulating their claims processing systems" --

---

[23] Res judicata, as Defendants correctly note, "is not limited to only claims that were actually litigated."  (Defs.' Reply to Suppl. Auth. 5.)  Rather, it bars all legal claims that a party could have raised in the prior litigation.  It does not, however, as Defendants state, "extend[] to all matters that the plaintiff raised or could have raised to support its claim in the first action." (Id. at 5 (emphasis added).)  That is, Defendants do not argue that the Provider and Medical Association Plaintiffs could have brought the RICO and antitrust claims proposed here in the earlier litigation because they arose out of the transactions, evidence, and facts at issue in MCL.  Rather, they argue that the MCL plaintiffs could have relied on transactions, evidence, and facts relating to HIAA and PHCS (which form the basis of the proposed claims here) to support the claims they actually did raise in MCL.  While whether "the same evidence is needed to support both claims" is relevant to the res judicata inquiry, see NLRB v. United Technologies Corp., 706 F.2d 1254, 1260 (2d Cir. 1983), the mere fact that a party "could have raised" a particular fact (rather than a particular claim) in the earlier action does not reflect the proper standard for assessing the res judicata effect of that prior action.  The Court therefore will not give particular weight to whether the MCL plaintiffs "could have raised [facts relating to HIAA and PHCS] to support [their] claim in the first action" except in determining to what extent evidence needed to support the MCL claims is also needed to support the Proposed RICO and Antitrust Claims here.  (Defs.' Reply to Suppl. Auth. 5.)

reflects the similar nature of the two cases.  MCL, 430
F.Supp.2d at 1340.  However, "the fact that the first and
second suits involved the same parties, similar legal
issues, similar facts, or essentially the same type of
wrongful conduct is not dispositive."  Maharaj, 128 F.3d at
97.  Rather, the standard for determining whether the
claims asserted here were or could have been asserted in
the MCL litigation is "whether the same transaction or
series of transactions is at issue, whether the same
evidence is needed to support both claims, and whether the
facts essential to the second were present in the first."
NLRB, 706 F.2d at 1260.

     The MCL plaintiffs alleged a conspiracy between HMOs
and McKesson to develop McKesson's database software to
manipulate CPT processing in order to underpay physicians.
McKesson was alleged to have "played a central role in the
conspiracy" as "a co-conspirator, an agent of the
Defendants, an intermediary, and the hub of the
conspiracy."  MCL, 430 F.Supp.2d at 1342.  That conspiracy
involved the CPT system, which was allegedly used to
defraud physicians by "covertly denying payments to
physicians based on financially expedient cost and
actuarial criteria rather than medical necessity,
processing physicians' bills using automated programs which

manipulate standard coding practices to artificially reduce the amount they are paid, and . . . systematically delaying payments to gain increased use of the physicians' funds." Klay, 382 F.3d at 1247 (quoting Provider Plaintiffs' Second Amended, Consolidated Class Action Complaint ¶ 6).

The PFAC here also involves alleged manipulation of data to underpay physicians, but here the transactions, evidence, and underlying facts differ considerably from those at issue in MCL. Unlike in MCL, where McKesson played a crucial role in the alleged conspiracy and where "much of [the plaintiffs'] evidence of conspiracy c[ame] from McKesson," here there is no alleged participation by third party software developers in the UCR scheme. MCL, 1340 F.Supp.2d at 1342. The MCL plaintiffs claimed, and the MCL Court acknowledged in its decision, that "the McKesson advisory committees were the principal avenue through which the Defendants and supposed co-conspirators met and allegedly conspired." Id. This case, on the other hand, involves Defendants' alleged manipulation of its own databases to reduce UCR reimbursements. Transactions, evidence, and facts relating to McKesson -- which were crucial to the MCL Court's findings -- are entirely unrelated to this litigation.

Defendants note that one of the alleged examples of

wire fraud in the MCL litigation was the promulgation of
internal guidelines instructing that providers be told that
"reimbursement rates are based on information about the
usual and customary charges of physicians" instead of "on
industry guidelines obtained from the Health Insurance
Association of America."  (Defs.' Reply to Suppl. Auth. 3
(quoting Am. Civil RICO Case Statement Pursuant to Local
Rule 12.1, dated April 20, 2001, at 132, ¶ 8).)  Defendants
also point out that certain depositions taken in the MCL
litigation at times addressed facts, evidence, and
transactions involving the HIAA and that document requests
included broad language such as "all documents describing
the database(s) used in setting premiums."  (Defs.' Reply
to Suppl. Auth. 4, n.7 (citing Provider Pls.' First Request
for Prod. Of Documents to all Defs., dated Oct. 1, 2002).)
However, the MCL Court never refers to any of these facts.
Neither the MCL summary judgment decision nor the earlier
Eleventh Circuit decision in the same litigation addresses
facts and evidence that are crucial to the proposed amended
claims here.  Neither contains any mention of usual,
customary, or reasonable rates or the setting of such
rates; the HIAA; Ingenix databases; or PHCS.

     The Court finds, therefore, on the basis of the
documents submitted and on the MCL Court's decision, that

facts, evidence, and transactions that form the basis for the proposed amended claims in this matter were tangential to the MCL litigation.  In addition to the different players in this second litigation (most notably, the absence of McKesson), the MCL Court's decision relied on facts, evidence, and transactions regarding manipulation of the CPT system that are, for the most part, distinct from the facts, evidence, and transactions regarding manipulation of the UCR databases at issue here.

The Provider and Medical Association Plaintiffs' Proposed RICO and Proposed Antitrust Claims are therefore not barred by the doctrine of res judicata, and the Plaintiffs' motion for leave to amend the TAC will not be denied as futile on that ground.

III. Conclusion

Accordingly, Plaintiffs' motion for leave to amend is GRANTED except as to any proposed claims that are based on injuries incurred prior to July 15, 2000.

SO ORDERED.

Dated: December 29, 2006

Lawrence M. McKenna
U.S.D.J.

57