UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                   :
THE AMERICAN MEDICAL ASSOCIATION,  :
et al.,                            :
              Plaintiffs,          :
                                   :
        -against-                  :    00 Civ. 2800 (LMM)
                                   :    MEMORANDUM AND
                                   :    ORDER
UNITED HEALTHCARE CORPORATION,     :
et al.,                            :
              Defendants.          :
                                   :
----------------------------------X

McKENNA, D.J.

    Defendants[1] here move for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure.

Plaintiffs, who include subscribers to certain health plans

("Subscriber Plaintiffs")[2], out-of-network medical care

providers suing as assignees of certain subscribers'

_____

[1] The defendants consist of the United HealthCare Corporation, including
the UnitedHealth Group Incorporated ("UGI"), United HealthCare
Insurance Company ("UHIC"), United HealthCare Services, Inc. ("UHS"),
United HealthCare Services of Minnesota, Inc. ("UHS of Minnesota"),
United HealthCare Services Corporation ("UHSC"), Ingenix, Inc.
("Ingenix") (collectively, "United Defendants"); Metropolitan Life
Insurance Company, and American Airlines, Inc. ("American Airlines")
(all, collectively, "Defendants").
[2] For purposes of this motion, Subscriber Plaintiffs consist of David
and Colleen Finley ("the Finleys"), S. Joseph Domina ("Domina"), Sandra
Taylor ("Taylor"), Clifford E. Wilson, individually and as executor of
the estate of Michele S. Wilson ("the Wilsons"), Peter Oborski
("Oborski"), Michael and Susie Grisham ("the Grishams"), Paul Steinberg
("Steinberg"), Helene Coull ("Coull"), and Edward F. Mitchell, Jr.
("Mitchell").  Subscriber Plaintiffs as referred to herein do not
include Matthew Crema or any of the various intervenor plaintiffs in
this litigation.

1

benefits claims ("Provider Plaintiffs")[3], and medical
associations suing in their associational capacity on
behalf of their members ("Medical Association Plaintiffs")[4]
(all, collectively, "Plaintiffs"), oppose Defendants'
motion for summary judgment. For the reasons set forth
herein, Defendants' motion for summary judgment is GRANTED
IN PART and DENIED IN PART.

## I. BACKGROUND

In this action, Plaintiffs challenge Defendants'
practices in relation to decisions involving the "usual,
customary, and reasonable" ("UCR") rates paid by Defendants
for out-of-network medical services in connection with
certain health care plans. All of the Subscriber
Plaintiffs are participants or beneficiaries in one of four
employer-sponsored health care plans ("Employer Plans"):
Subscriber Plaintiffs Taylor, Wilson, Oborski, Steinberg,
Coull, and the Grishams are participants or beneficiaries
of the Employer Plan sponsored by American Airlines
("American Airlines Plan"); Subscriber Plaintiff Mitchell
was a participant in the Employer Plan sponsored by Osram
Sylvania ("Osram Plan"); Subscriber Plaintiff Domina is a

---

[3] The Provider Plaintiffs are John Marcum, M.D., Michael Attkiss, M.D.,
and William B. Ericson, Jr., M.D.
[4] The Medical Association Plaintiffs consist of the American Medical
Association, the Medical Society of the State of New York, and the
Missouri State Medical Association.

participant in the Employer Plan sponsored by Chase
Manhattan Bank ("Chase Plan"); and the Finleys were
participants in the Employer Plan sponsored by Professional
Engineering Consultants ("PEC Plan"). (Defs.' Statement of
Undisputed Facts ("Defs.' Statement") No. 3.) Each of
these Employer Plans authorizes its subscribers to obtain
health care services from "out-of-network" physicians who
do not participate in a network of providers maintained by
one of the United Defendants. (Id.) Subscribers are then
reimbursed a certain percentage of the "usual, customary
and reasonable" fees for such services based on United
Healthcare's calculation of the UCR rates.[5]

Plaintiffs allege that Defendants' practices in
determining UCR rates, including Defendants' alleged
reliance on the Prevailing Healthcare Charges System
("PHCS") database, violate ERISA, the terms of the Employer
Plans themselves, and, in the case of certain plaintiffs,
New York's Deceptive Trade Practices statute and contract
law. This Court recently authorized Plaintiffs to assert
additional claims against United Defendants for antitrust
and RICO violations based on their alleged scheme to under-

---

[5] Defendants object to the use of the term UCR, arguing that it
mischaracterizes the terms of the Employer Plans. The Court recognizes
that the plans employ slightly different language and will, of course,
differentiate between them as necessary. Nonetheless, the Court will
continue to employ this term in the way that various litigants have
throughout this litigation: for convenience.

reimburse beneficiaries and medical care providers by manipulating UCR data.  See Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM), 2006 WL 3833440 (Dec. 29, 2006).  A comprehensive fourth amended complaint has yet to be filed.

This action was initially filed in New York state court and was removed to this Court in April 2000. In the intervening years this Court has addressed several motions, including multiple motions to dismiss.  Most recently, the Court granted in part and denied in part both a motion to dismiss the Counterclaim Complaint, see Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM), 2007 WL 683974 (S.D.N.Y. March 5, 2007), and a motion for leave to amend the Third Amended Complaint, see Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM), 2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006).

In its memorandum and order addressing Defendants' motion to dismiss the Third Amended Complaint, the Court noted its concerns relating to certain preliminary issues raised by Defendants, such as whether Plaintiffs had exhausted their administrative remedies, whether various Plaintiffs had standing, and whether Defendants were proper parties to certain of Plaintiffs' claims.  See Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM),

2002 WL 31413668 (S.D.N.Y. Oct. 23, 2002) (the "October

2002 Order").  Given the procedural posture of the case on

that motion to dismiss, the Court accepted the Plaintiffs'

allegations as true and, for the most part, denied

Defendants' motion to dismiss on those preliminary issues.

However, recognizing that proceeding to merits discovery

represented a massive undertaking for all parties, the

Court ordered the parties to proceed only with what it

termed "Stage One" discovery.  Stage One discovery was

"limited to the proper parties in this action as opposed to

the merits of the case."  October 2002 Order at *6.[6]

    Stage One discovery has now been completed, and before

the Court here is what may be termed Defendants' Stage One

summary judgment motion; that is, Defendants' motion for

summary judgment based on whether there are disputed issues

of material fact regarding those preliminary issues for

---

[6] Several developments have occurred in this litigation following the
October 2002 Order, including the unopposed motion of the Union
Plaintiffs to intervene in this action on behalf of their members,
which this Court granted January 30, 2003, see Am. Med. Ass'n v. United
Healthcare Corp., No. 00 Civ. 2800 (LMM), 2003 WL 230897 (S.D.N.Y. Jan.
30, 2003), and Defendants' subsequent motion to dismiss Union
Plaintiffs' Complaint in Intervention and to compel arbitration of the
Union Plaintiffs' claims, which the Court denied on August 22, 2003.
See Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM),
2003 WL 28004877 (S.D.N.Y. Aug. 22, 2003).  More recently, the Court
granted Plaintiffs' motion for leave to amend the Third Amended
Complaint -- that is, to file a Fourth Amended Complaint -- primarily
in order to add RICO and antitrust claims against United Defendants.
See Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM),
2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006).  The Fourth Amended Complaint
has not yet been filed.  Stage One discovery did not include these new
plaintiffs or these new claims, and Defendants do not seek summary
judgment on them here.

which discovery was conducted during Stage One.

## II. DISCUSSION

### A. Defendants' Motions to Strike

In conjunction with their reply memorandum of law in this summary judgment motion, Defendants submitted both a Motion to Strike Plaintiffs' Responses to Defendants' Statement of Undisputed Facts and a Motion to Strike the Affidavits of D. Brian Hufford and Barry M. Epstein. Because the outcome of these motions could affect the facts considered in deciding this summary judgment motion, the Court addresses them as a preliminary matter here.

### 1. The Motion to Strike Plaintiffs' Responses to Defendants' Statement of Undisputed Facts

Defendants argue that Plaintiffs' counterstatement of facts fails to comply with Local Rule 56.1 because it contains mischaracterizations of the record, includes arguments and legal conclusions, and neglects to cite admissible evidence.

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York establishes rules both parties must satisfy when a summary judgment motion is filed. Rule 56.1(a) requires a party moving for summary judgment to

submit a short, concise statement that, in numbered
paragraphs, sets forth each material fact in the case.
Rule 56.1(b) requires a party opposing a motion for summary
judgment to include a counterstatement of material facts.
Rule 56.1(d) requires that each statement filed pursuant to
Rules 56.1(a) and (b) cite to admissible evidence in the
record.

     "Local Rule 56.1 is designed to place the
responsibility on the parties to clarify the elements of
the substantive law which remain at issue because they turn
on contested facts."  Monahan v. New York City Dep't of
Corrections, 214 F.3d 275, 292 (2d Cir. 2000).  When
parties decline to file Rule 56.1 statements, or when the
statements they file lack citations or are in some other
way deficient, courts are "free to disregard" the
assertions therein.  Holtz v. Rockefeller & Co., Inc., 258
F.3d 62, 73 (2d Cir. 2001).  However, "[a] district court
has broad discretion to determine whether to overlook a
party's failure to comply with local court rules."  Id.  As
the Court of Appeals in this Circuit has recognized, "while
a court 'is not required to consider what the parties fail
to point out' in their Local Rule 56.1 statements, it may
in its discretion opt to 'conduct an assiduous review of
the record' even where one of the parties has failed to

file such a statement." Id. (citations omitted). See also
Derienzo v. Metropolitan Transp. Authority, 404 F.Supp.2d
555 (S.D.N.Y. 2005).

Here, Plaintiffs filed a response to Defendants'
statement of undisputed facts, thereby satisfying the
formal requirement of Local Rule 56.1(b). Defendants
accurately point to certain portions of Plaintiffs'
response that lack citations to the record. However, for
the most part Plaintiffs' factual responses refer the Court
to admissible evidence and thereby comply with Local Rule
56.1(d). To the extent that they do not contain citations
to admissible evidence in the record, the Court finds it
not unduly burdensome to seek to fill such gaps by its own
perusal of the record, especially as the extensive briefing
on the motion for summary judgment provides significant
guidance through repeated citations to the record.

Because the Court experiences minor inconvenience,
rather than undue burden, as a result of Plaintiffs'
occasional failure to cite admissible evidence in the
response to the statement of undisputed facts, it chooses
to exercise its discretion "to overlook" any such "failure
to comply with local court rules." Holtz, 258 F.3d at 73.
For this reason, and because the Court finds Defendants'

other objections[7] to Plaintiffs' response unavailing,

Defendants' Motion to Dismiss Plaintiffs' Response to

Defendants' Statement of Undisputed Facts is DENIED.

## 2. The Motion to Strike the Affidavits

Defendants also move to strike the affidavits of D.

Brian Hufford ("Hufford Affidavit") and Barry M. Epstein

("Epstein Affidavit"), which Plaintiffs submitted in

conjunction with their opposition to Defendants' motion for

summary judgment.  Defendants argue that both affidavits

violate Fed. R. Civ. P. 56(e).  Plaintiffs, in addition to

opposing the motion to strike, submitted revised versions

of both the Hufford Affidavit ("Revised Hufford Affidavit")

and the Epstein Affidavit ("Revised Epstein Affidavit").

Defendants counter that even the revised affidavits should

be stricken because the Revised Epstein Affidavit is not

based on personal knowledge and because both affidavits

mischaracterize evidence and rely on inadmissible hearsay.

Rule 56(e) provides, in relevant part, that

"[s]upporting and opposing affidavits shall be made on

personal knowledge, shall set forth such facts as would be

---

[7] Defendants assert that Plaintiffs' response misrepresents the record
and is, at times, argumentative and conclusory.  Plaintiffs' opposition
to Defendants' motion to strike Plaintiffs' response raises similar
complaints regarding Defendants' statement of undisputed facts. The
Court, in deciding the motion for summary judgment, disregards any such
arguments and conclusory statements and relies, of course, on the
record itself rather than on either party's representations regarding
the record.

admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

To the extent that the Revised Hufford and Epstein Affidavits contain argument or facts of which the affiants do not have personal knowledge, the Court disregards them. The majority of both revised affidavits appears, however, to be based on personal knowledge of the record and to set forth (and cite to) admissible evidence. The Court will consider those portions of the revised affidavits that comply with Rule 56(e) and, of course, the exhibits attached to both affidavits. The motions to strike both affidavits are therefore DENIED.

**B. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Nabisco, Inc. v. Warner-</u>

Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"A fact is 'material' for these purposes if it 'might

affect the outcome of the suit under the governing law.'"

Overton v. N.Y. State Div. of Military & Naval Affairs, 373

F.3d 83, 89 (2d Cir. 2004) (quoting Anderson, 477 U.S. at

248).

The party seeking summary judgment bears the burden of

showing that no genuine factual dispute exists.  See Cronin

v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).

After the moving party has made such a showing, the burden

shifts to the nonmoving party to raise a triable issue of

fact.  Anderson, 477 U.S. at 250.  On a motion for summary

judgment, a court must view the record in the light most

favorable to the nonmoving party, resolving all ambiguities

and drawing all reasonable inferences in that party's

favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986).


**C. Exhaustion of Administrative Remedies**

Defendants first argue that summary judgment should be

granted on the vast majority of Plaintiffs' claims because

the Subscriber Plaintiffs have not exhausted their

administrative remedies.  (Defs.' Mem. in Supp. 6.)

Defendants contend that, "[o]ut of a total of 9,489 claims determinations, all of Plaintiffs combined asserted appeals for only 135 individual claims" (the "135 Fully Appealed UCR Claims") and that Defendants are entitled to summary judgment for all of the Subscriber Plaintiffs' ERISA claims except for the 135 Fully Appealed UCR Claims. (Defs.' Mem. in Supp. 8.) The question on this motion is whether Plaintiffs have presented evidence to create a triable issue of fact as to whether these claims were exhausted or, if not, whether their failure to satisfy the exhaustion requirement should be excused.

Stage One discovery has revealed three general groupings of Subscriber Plaintiffs and claims in regards to administrative exhaustion: the 135 Fully Appealed UCR Claims made by Subscriber Plaintiffs Domina, Oborski, Taylor, Wilson, and the Finleys; claims made by Subscriber Plaintiff Mitchell that were fully appealed; and claims by those same plaintiffs and by Subscriber Plaintiffs Steinberg, Grisham, and Coull that were not fully appealed.

**1. ERISA's Exhaustion Requirement**

"ERISA requires both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation." Eastman Kodak Co. v. STWB, Inc.,

452 F.3d 215, 219 (2d Cir. 2006) (citing 29 C.F.R. §

2560.503-1 and Jones v. UNUM Life Ins. Co. of Am., 223 F.3d

130, 140 (2d Cir. 2000)). As this Court observed in its

October 2002 Order, "[t]he Second Circuit has recognized

"the firmly established policy favoring exhaustion of

administrative remedies in ERISA cases.'" Oct. 2002 Order

at *4 (quoting Kennedy v. Empire Blue Cross and Blue

Shield, 989 F.2d 588, 594 (2d Cir. 1993) (internal citation

omitted)). This exhaustion requirement serves to "(1)

uphold Congress' desire that ERISA trustees be responsible

for their actions, not the federal courts; (2) provide a

sufficiently clear record of administrative action if

litigation should ensue; and (3) assure that any judicial

review of fiduciary action (or inaction) is made under the

arbitrary and capricious standard, not de novo." Davenport

v. Harry N. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001);

see also Kennedy, 989 F.3d at 594.

The parties dispute whether the administrative

exhaustion requirement in ERISA cases is jurisdictional in

nature, with Defendants asserting that "exhaustion [is] a

jurisdictional prerequisite to bringing suit under ERISA"

and Plaintiffs countering that whether to require

exhaustion "lies within the sound discretion of the court."

(Defs.' Mem. in Supp. 7; Pls.' Mem. in Opp. 11.) The

Second Circuit resolved this issue after this motion was fully submitted, holding that "a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense." Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435, 446 (2d Cir. 2006).

While the ERISA exhaustion requirement is not jurisdictional, neither is it an insignificant procedural hurdle. Claimants may be exempted from the administrative exhaustion requirement only by making a "'clear and positive showing' that pursuing available administrative remedies would be futile." Kennedy, 989 F.2d at 594 (internal citation omitted). See also Eastman Kodak, 452 F.3d at 594 ("Unless a 'clear and positive showing' is made that it would be futile for the claimant to pursue her claim through the internal claims process, 'that remedy must be exhausted prior to the institution of litigation.'" (internal citations omitted)).

**2. Exhaustion of the 135 Fully Appealed UCR Claims**

The Court first addresses the status of the 135 Fully Appealed UCR Claims. Defendants do not dispute that Plaintiffs Domina, Taylor, Oborski, Wilson, and the Finleys pursued each required level of appeal regarding the issue of UCR reimbursement and therefore fully exhausted their

administrative remedies for these particular claims.[8]  (See
Epstein Aff. Ex. 2.)  However, although Defendants concede
that Plaintiffs satisfied the procedural requirements to
exhaust administrative remedies for these 135 Fully
Appealed UCR Claims, they nonetheless assert that they are
entitled to summary judgment on these claims because
Plaintiffs, Defendants argue, did not assert "a flaw in the
PHCS database or that any purported flaw caused an
underpayment" during the appeals process.  (Defs.' Mem. in
Supp. 10.)

     Defendants thus contend that they are entitled to
summary judgment because Plaintiffs failed to exhaust not
the claims themselves but rather the underlying issue of
the PHCS database and related methodology.  (Defs.' Reply
7.)  They further assert that the Court's review of these
appeals should be limited to evidence in the administrative
record, which Defendants note does not include information
regarding the PHCS database and underlying data.

     The Court need not decide the scope of its review of
the administrative appeals determinations in order to
determine whether Plaintiffs adequately raised the issue of
the PHCS database and UCR determinations in their 135 Fully

---

[8] Three of the four Employer Plans are represented by these Subscriber
Plaintiffs: Plaintiff Domina is a subscriber to the Chase Plan;
Plaintiffs Taylor, Oborski, and Wilson are subscribers to the American
Airlines Plan; and Plaintiff Finley is a subscriber to the PEC Plan.

Exhausted UCR Claims, and it declines to do so at this phase of the litigation.[9] The question in this Stage One summary judgment motion is limited to whether Plaintiffs have introduced evidence to create an issue of fact as to whether the UCR calculation rates and methodology were raised in their administrative appeals.

Plaintiffs have presented evidence that the Subscriber Plaintiffs involved in the 135 Fully Appealed UCR Claims did raise the issue of the UCR calculation and methodology in their appeals. For instance, Subscriber Plaintiff Wilson argued in one appeal that "[t]he determination of usual and prevailing is flawed." (Kemper Aff. Ex. 29.) Subscriber Plaintiffs David and Colleen Finley challenged a determination of reasonable and customary fees by stating: "Please explain in detail why United Healthcare considers my doctors' charges to be above 'Reasonable and Customary.' I would also like to see any studies or other back-up information that United Healthcare is relying upon." (Epstein Aff. Ex. 41.) One of Subscriber Plaintiff Oborski's appeals requested "the basis for your conclusion in determining UCR" and, at a later stage, stated "[p]lease provide a satisfactory answer, as well as the underlying

---

[9] Whether the Court's review of these claims will be confined to the administrative record or whether good cause exists to go beyond that record are issues for the merits and are not within the scope of this Stage One summary judgment motion.

data, to support any 'reasonable charge' that is <u>less</u>" than
a figure that Oborski believed to be reasonable. (Epstein
Aff. Ex. 42.) Plaintiffs have pointed to such evidence for
other Subscriber Plaintiffs as well. (<u>See</u> Pls.' Response
to Defs.' Statement of Undisputed Facts No. 11.)

The Court finds that this evidence is sufficient to
create an issue of fact as to whether Plaintiffs raised the
PHCS issue in their administrative appeals of the 135 Fully
Appealed UCR Claims. Defendants' motion for summary
judgment as to the PHCS issue in the 135 Fully Appealed UCR
Claims is therefore DENIED.

**3. Exhaustion of Plaintiff Mitchell's Appealed Claims**

Both parties agree that Subscriber Plaintiff Mitchell
"appealed several of his claims for benefits under ERISA §
502(a)(1)(B) to completion under the relevant
administrative remedies under the Osram Plan." (Defs.'
Statement No. 9; <u>see also</u> Pls.' Response No. 9.)
Defendants argue, however, that Plaintiff Mitchell did not
exhaust the issue of UCR reimbursement rates in his
appeals. Unlike with the 135 Fully Appealed UCR Claims,
here Defendants argue not that Plaintiff Mitchell failed to
specifically challenge the PHCS database and methodology
but rather that the subject matter of his appeals was
United Healthcare's determination regarding the "medical

necessity" of various medical services provided.
Defendants seek summary judgment on Plaintiff Mitchell's
claims, arguing that he failed to exhaust his
administrative remedies because, although he completed the
necessary appeals, he "did not contest whether he was
reimbursed at the 'reasonable charge' as defined in the
Osram Plan." (Defs.' Statement No. 9.) Plaintiffs
challenge Defendants' characterization of the basis of
Plaintiff Mitchell's appeals, "disput[ing] that Mitchell
did not raise the issue of UCR in his appeals to Osram."
(Pls.' Response No. 9.)

     Plaintiffs have not identified any specific instance
of Mitchell's raising the issue of UCR reimbursement rates
in his appeals, and the majority of the appeals
documentation appears to involve evaluations of medical
necessity rather than of UCR reimbursement rates. For
instance, a letter of appeal prepared by Mitchell's
attorney, which summarizes Mitchell's medical condition in
detail and chronicles United Healthcare's response, notes
that United Healthcare

          unquestioningly paid for the treatments . . .
          throughout 1996 and early 1997. Then in the first
          half of 1997 United refused payments for the exact
          same treatments for which they had previously paid.
          For the greater part of 1997 and all of 1998 United
          Health Care has refused to pay for Mr. Mitchell's
          treatment alleging that these treatments were not

medically necessary.

(Kemper Aff. Ex. 6.)

However, Plaintiffs do point to somewhat ambiguous references to reimbursement amounts in documents submitted in conjunction with Mitchell's appeals, including: Mitchell's letter complaining that the reimbursement amount of $82 for a procedure was "ridiculous" (Kemper Aff. Ex. 6); Mitchell's letter requesting that United Healthcare "straighten out all of 1997 bills" (Kemper Aff. Ex. 6); a letter by Mitchell's attorney noting "confusion concerning what are covered services under his health care insurance and the appropriate reimbursements for same" (Epstein Aff. Ex. 37 (emphasis added)); and Mitchell's letter inquiring "[w]hen surgery is covered, why is it that United always picks the lower cost one?") (Epstein Aff. Ex. 37.)

A review of the claim summary record for the time period at issue in the above-cited letters buttresses Plaintiffs' interpretation as to the basis of at least some of Mitchell's appeals.  The record includes not only claims that were denied in full, as one would expect when the basis for the denial was lack of medical necessity, but also claims that were allowed in part, that is, claims where United Healthcare paid some but not all of the amount claimed.  (Epstein Aff. Ex. 1.)  Without additional

information about the specific claims, the Court cannot

conclude that Defendants have met their burden of showing

that there is no issue of fact as to the subject of

Mitchell's appeals requesting that United HealthCare

"straighten out all of 1997 bills."  (Kemper Aff. Ex. 6,

Letter of April 14, 1998 to Lisa Vasas.)

As noted above, a court considering a motion for

summary judgment must view the record in the light most

favorable to the nonmoving party, resolving all ambiguities

and drawing all reasonable inferences in that party's

favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986).  Resolving all ambiguities in the

appeals record in Plaintiff Mitchell's favor, the Court

finds that Plaintiffs have presented sufficient evidence to

create a question of fact as to the basis for at least some

of Plaintiff Mitchell's appealed claims and have therefore

met their burden.  Defendants' motion for summary judgment

as to the basis of Plaintiff Mitchell's fully exhausted

administrative appeals is DENIED.[10]

**4.  Claims That Were Not Fully Appealed**

Defendants assert that, "[o]ut of a total of 9,489

claims determinations, all of Plaintiffs combined asserted

---

[10] Plaintiff Mitchell subscribed to the Osram Plan, so at least one
Subscriber Plaintiff from each of the four Employer Plans fully
exhausted administrative appeals for certain claims.

appeals for only 135 individual claims" and that Defendants
are entitled to summary judgment on each of the ERISA
claims for which appeals have not been exhausted. (Defs.'
Mem. in Supp. 8.) As discussed above, Plaintiffs have
presented evidence to create a triable issue of fact as to
the exhaustion both of the 135 Fully Appealed UCR Claims
and of Plaintiff Mitchell's claims. Defendants have shown
(and Plaintiffs do not dispute) that there is no issue of
fact as to whether the remaining Subscriber Plaintiffs --
Steinberg, Grisham, and Coull -- exhausted their
administrative remedies for any of their claims: they
clearly did not. Nor is there an issue of fact as to
whether the other Subscriber Plaintiffs (Domina, Taylor,
Oborski, Wilson, and the Finleys) exhausted administrative
remedies for claims other than the 135 Fully Appealed UCR
Claims. The remaining question is therefore whether all of
these concededly unexhausted claims (the "Unexhausted
Claims") should be excused from the exhaustion requirement.

**a. The Futility Exception**

In order to be excused from the requirement that an
ERISA plaintiff exhaust available administrative remedies,
that plaintiff must make a "clear and positive showing"
that pursuing administrative remedies would have been
futile. <u>Kennedy</u>, 989 F.2d at 594. Courts in this district

have recognized that this imposes a substantial burden on plaintiffs, for "[t]he threshold required by the futility exception is very high." Patterson v. J.P. Morgan Chase & Co., No. 01 Civ. 7513, 2002 WL 207123 *3 (S.D.N.Y. Feb. 11, 2002). To survive this motion for summary judgment, Plaintiffs must present evidence to create an issue of fact as to whether they could, at trial, make a "clear and positive showing" of the futility of pursuing administrative appeals for the Unexhausted Claims. Despite Plaintiffs' numerous arguments, the Court finds that Plaintiffs have failed to present such evidence.

**b. Procedural Inadequacies**

Plaintiffs argue that their failure to exhaust administrative appeals for these claims should be excused as futile because the appeals process did not provide them with "full and fair review" of the claim decisions as required by ERISA. (Pls.' Mem. in Opp. 46.) While Plaintiffs correctly note that "[a] host of procedural deficiencies have been held to excuse exhaustion of administrative remedies," Plaintiffs have not introduced evidence to show that any of the procedural deficiencies recognized to constitute futility existed in the appeals procedures for the Unexhausted Claims. (Id.)

**i. Full and Fair Review and the PHCS Database**

Plaintiffs first assert that United Healthcare "repeatedly provided inadequate explanation for its determinations," thereby denying them full and fair review of the claims decisions. (Pls.' Mem. in Opp. 47.) Classically, courts have found futility for failure to provide full and fair review where plan administrators failed to respond to requests for review of claims decisions, see, e.g., Ludwig v. NYNEX Service Co., 838 F.Supp. 769, 782 (S.D.N.Y. 1993), and where beneficiaries were not informed of their right to appeal a claim decision, see, e.g., Novak v. TRW, Inc., 822 F.Supp. 963, 969 (E.D.N.Y. 1993). Courts have also observed that full and fair review may require that the plan administrator "inform the participant or beneficiary of the evidence that the fiduciary relied upon and provide 'an opportunity to examine that evidence and to submit written comments or rebuttal' documents." Lidoshore v. Health Fund 917, 994 F.Supp. 229, 236-237 (S.D.N.Y. 1998) (quoting Grossmuller v. International Union, 715 F.2d 853, 858 (3d Cir. 1983)). See also Jurash v. Hartford Life Ins. Co., No. 99 Civ. 8916, 2000 WL 364896 *3 (S.D.N.Y. April 7, 2000).

Here, Plaintiffs argue that they were denied full and fair review because Defendants refused to disclose the evidence on which they relied in making their claims

decisions, including the existence of the PHCS database,
the methodology by which the PHCS UCR figures were
calculated, and the underlying data on which the PHCS
figures were based.  In notices informing beneficiaries of
decisions, United Healthcare explained that billed charges
were not paid because they exceeded UCR amounts.[11]  While
some further details -- such as the existence of the
database -- were sometimes provided during appeals,
Plaintiffs have introduced substantial evidence that
appeals personnel did not disclose, and often were not even
aware of, the underlying methodology and data used in
calculating the UCR rates.  (Pls. Mem. in Opp. 48-49; Pls.'
Response to Defs.' Statement of Facts Nos. 17, 35.)

    As Defendants note, however, Plaintiffs were supplied
with information regarding the basis for their claims
denials, including the UCR allowance, the number of
occurrences that the allowance was based on, and the
geographic area included in the calculation of the
allowance.  (Defs.' Mem. in Reply 18.)  Plaintiffs who did
appeal were thus provided with more information, and

---

[11] For instance, in an explanation of benefits form provided to
Plaintiff Grisham, United Healthcare explained that benefits were
denied because "[y]our plan covers reasonable charges for covered
health services.  The reasonable charge is based on amounts charged by
other health care providers in the area for similar services or
supplies.  Benefits are not available for that portion of the charge
that exceeds the reasonable charge determined for this service."
(Epstein Aff. Ex. 11.)

sounder bases for full and fair review of claims denials,
than were the plaintiffs found to have been denied full and
fair review in the cases upon which Plaintiffs rely.  In
Jurash, for instance, the plan administrator "twice stated
that it relied on plaintiff's claim file as a whole in
making its termination decision and yet refused to provide
an opportunity to examine the file in full."  Jurash, 2000
WL 364896 at *3.  Plaintiffs here were not denied access to
their files, and they were given more information than was
the plaintiff in Grossmuller, where the Third Circuit
affirmed a finding that the plaintiff had been denied full
and fair review where the administrator "informed [the
plaintiff] only that his benefits had been terminated on
the ground that he was found to be gainfully employed. The
[administrator] did not state upon what evidence it relied
or invite [the plaintiff] to examine that evidence or to
submit written comments or rebuttal documentary evidence."
Grossmuller, 715 F.2d at 858.

    While Defendants denied Plaintiffs access to the
underlying database information or the UCR calculation
methodology during the appeals process, Plaintiffs have
failed to show that Defendants' refusal to provide such
information rendered any and all appeals of UCR
determinations futile.  The question of whether and under

what circumstances Defendants are required to disclose such information is at the heart of this litigation.  It remains a significant issue as this case proceeds to the merits on claims that were procedurally preserved, but it does not excuse Plaintiffs' failure to exhaust appeals for the Unexhausted Claims.

## ii. Exhaustion under Department of Labor Regulations

Plaintiffs next argue that their failure to appeal the Unexhausted Claims should be excused as futile on procedural grounds because the health plans at issue in this litigation failed "to establish or follow claims procedures consistent with the [Department of Labor] requirements . . ." (Pls.' Mem. in Opp. 50.)  Plaintiffs rely on 29 C.F.R. § 2560.503-1, citing its provisions regarding, inter alia, evidence used in claims determinations, reasons that must be provided in benefits denials, and the maximum number of appeals that may be required in a plan.  As Plaintiffs correctly note, these procedural requirements were not followed; for instance, the American Airlines Plan, the Chase Plan, and the Osram Plan all required a third level of appeal for exhaustion while the regulation limits the required number of appeals to two.  (Pls.' Mem. in Opp. 53; Pls.' Reply to Defs.' Statement of Facts No. 15.)  Plaintiffs argue, therefore,

that they should "be deemed to have exhausted the administrative remedies available under the plan" as provided by 29 C.F.R. § 2560.503-1(*l*).

However, as Plaintiffs acknowledge, the official effective date of this Department of Labor regulation is 2002. 29 C.F.R. § 2560.503-1(o). As the Court of Appeals has observed, "[t]he regulation took effect in 2002, and [superseded] a similar but narrower provision." Eastman Kodak Co. v. STWB, 452 F.3d 215, 222 (2d Cir. 2006). Courts have declined to apply the current provision retroactively, see, e.g., DiCamillo v. Liberty Life, 287 F.Supp.2d 616, 625 (D. Md. 2003), and this Court will not do so here. Plaintiffs' administrative remedies, therefore, are not deemed exhausted on those grounds.

**c. Fixed Policy and the PHCS Database**

In addition to their arguments regarding procedural flaws, Plaintiffs assert that any appeals would also have been, as they term it, "substantively" futile; that is, that because Defendants rely on PHCS data in evaluating administrative appeals, appeals are futile in that "a successful appeal will never result in [a UCR reimbursement] amount in excess of the figure generated by the PHCS database." (Pls.' Mem. in Opp. 24, 30.) Plaintiffs thus contend that their failure to exhaust

administrative remedies for these claims should be excused
as substantively futile because of United Healthcare's
"fixed policy of refusing to reconsider the validity of the
PHCS database."  (Pls.' Mem. in Opp. 26.)

Plaintiffs rely on a number of cases finding futility
where "the insurer or the Plan ha[s] adopted an across-the-
board or fixed policy that will result in a 'predetermined'
fruitless appeal." (Pls.' Mem. in Opp. 27.)  Several of
these cases do not apply to the facts at hand because the
"fixed policy" at issue therein was one of simply making a
blanket denial of a certain type of claim.  See, e.g.,
Berger v. Edgewater Steel Co., 911 F.2d 911, 917 (3d Cir.
1990) (finding that exhaustion would have been futile where
the company had adopted a policy of denying all
applications for a specific plan); Sibley-Schreiber v.
Oxford Health Plans, 62 F.Supp.2d 979, 988-989 (E.D.N.Y.
1999)(finding futility based on "blanket denial of
coverage" where "plaintiffs [we]re challenging a policy
that they have been told over and over again is not subject
to exception" after insurance company altered its plan
interpretation so that it would "would pay for only six
Viagra pills per month regardless of the number of pills
prescribed by the physician.")  Other cases cited by
Plaintiffs in their "fixed policy" argument are similarly

inapplicable because they involve an insurer's relying on an interpretation of a plan despite contradictory evidence submitted on appeal. See, e.g., McGraw v. Prudential Ins. Co. of America, 137 F.3d 1253, 1264 (10th Cir. 1998) (finding that the district court had abused its discretion in declining to find futility where, in addition to procedural defects in the appeals process, the insurance company "followed its own interpretation of the Plan isolated from any understanding of the treatment needs of the Plan's beneficiary" despite the beneficiary's "treating neurologist and urologist's opinions the services prescribed were medically necessary.").

More to the point is Corsini v. United Healthcare Corp., a case relied on by both Plaintiffs and Defendants in which the plaintiffs alleged futility in their challenges of two practices: first, the defendants' policy of calculating co-payment amounts using the average and prevailing charge rather than the discounted charge that had been negotiated between the defendants and medical care providers (the "co-payment claims"), and, second, the defendants' refusal to disclose data that would allow the plaintiffs to calculate the annual premiums paid by their employers, which the plaintiffs sought in order to enable them to recover, as provided by their plans, "reimbursement

for co-payments that exceed 200% of their annual premiums"
(the "reimbursement claims").  Corsini v. United Healthcare
Corp., 965 F.Supp. 265, 267 (D.R.I. 1997).  The Corsini
court found that the plaintiffs had satisfied their "heavy
burden" of making a "clear and positive showing of virtual
certainty that resort to administrative remedies would
result in denial of the claim" for their co-payment claims
but not for their reimbursement claims.  Id. at 269 (citing
Makar v. Health Care Corp., 872 F.2d 80, 83 (4th Cir.
1989)).  The Corsini court reasoned that, in light of the
defendants' fixed and long-standing policy of calculating
co-payment amounts according to its own interpretation of
the plan, "it is inconceivable that resort to the
administrative review process would result in anything
other than a denial of the plaintiffs' [co-payment] claim."
Id. at 269-70.[12]

---

[12] Notably, while it excused the plaintiffs from the administrative
exhaustion requirement for the co-payment claims, the Corsini court
found that the plaintiffs had not met their "heavy burden" of showing
futility with respect to their reimbursement claims: "Apart from the
question of whether, under the Plan, the defendants are obliged to
provide subscribers with tallies of the premiums paid by them and/or
their employers, there is no indication that some mutually satisfactory
accommodation could not be reached through the administrative review
process."  Corsini, 965 F.Supp. 265, 270 (D.R.I. 1997).  Examples of
such mutually satisfactory outcomes exist in this case, such as where
Defendants paid the full billed charge because there was insufficient
data in the PHCS database to support the database rate. (Hufford Aff. ¶
20.)  While such examples are certainly exceptions to the standard
outcome of Plaintiffs' appeals regarding UCR determinations, they
nonetheless undercut Plaintiffs' ability to show that it was
"inconceivable that resort to the administrative process would result
in anything other than denial of the plaintiffs' claim."  Corsini, 965

In the instant case, Defendants have shown that it is far from "inconceivable" that pursuit of administrative appeals would result in some grant of additional benefits; rather, Defendants have pointed to evidence in the record where Plaintiffs actually received additional reimbursements through the administrative appeals process. For example, Defendants have presented evidence to show that additional benefits were granted in appeals where the initial UCR reimbursement amount was based on a database rate that lacked sufficient supporting data; in such cases, the full billed charge was allowed. (Hufford Aff. ¶ 21.) In other examples, beneficiaries received additional reimbursements through the appeals process when that process indicated that incorrect procedure codes had been used in the initial benefits decision or that preauthorization had been granted for the procedure at issue.  (Hufford Aff. ¶¶ 22, 35(a).)[13]

In addition to Corsini, Plaintiffs also rely heavily on Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410 (6th Cir. 1998).  In Fallick, the Sixth Circuit found that the district court had abused its discretion in failing to find

_____

F.Supp. at 269-70.

[13] Plaintiffs correctly note that these are "selective" examples of appeals that resulted in some additional reimbursement and that the vast majority of appealed claims did not result in additional benefits. The point remains, however, that these examples of success in the claims process undermine Plaintiffs' ability to make the requisite "clear and positive showing" that their appeals would have been denied.

futility where the plaintiff, on his own behalf and on behalf of a proposed class, had engaged in a two-year long "triangular dialogue of communications in every direction [with] the State Insurance Department and [the insurance company]" regarding the methodology by which the insurance company calculated the UCR reimbursement rate under his health insurance plan.  Id. at 417.  While the district court had "found that this lengthy dialogue did not comply with the Plan's formal appeals process" and declined to excuse the plaintiff's failure to exhaust that formal appeals process, the Sixth Circuit excused the failure to exhaust administrative appeals as futile where the insurance company had consistently defended its policy of using Health Insurance Association of America ("HIAA") data, refused to provide "more than but a cursory explanation of its methodology," and insisted that it would continue to use HIAA data "to calculate its reimbursement determinations despite evidence that this policy violates the actual terms of the [health insurance plan]."  Id. at 417, 420.

Factually, Fallick has much in common with the instant case: it involved a putative class action challenging a health insurance company's use of HIAA data to calculate UCR reimbursement rates, and it alleged that the

administrative appeals process was futile because the
insurance company refused to disclose its methodology for
calculating those UCR rates during the appeals process.
Defendants seek to distinguish <u>Fallick</u> by arguing that
Plaintiffs here have made only general challenges to UCR
reimbursement rates, rather than explicit challenges to
United Healthcare's methodology, and that "[w]ithout the
same type of multiple, specific and consistent challenges
to the methodology used in creating the PHCS database . . .
Plaintiffs have not established futility under the tenets
of <u>Fallick</u>." (Defs.' Reply 27.) The Court finds this
attempted distinction unavailing and declines to hold that
<u>Fallick</u> does not apply simply because Plaintiffs' appeals
of UCR reimbursement rates were not sophisticatedly worded
or not sufficiently targeted at United Defendants' use of
the PHCS database, particularly as Defendants repeatedly
declined to provide the information that would have enabled
Plaintiffs to better direct their appeals.

Nonetheless, <u>Fallick</u> does not mandate a finding of
futility in the instant action. As the <u>Fallick</u> Court
observed, in finding "[c]lear and positive evidence of the
futility of exhausting the Plan's administrative remedies"
a court should look to the purposes of the exhaustion of
remedies doctrine. <u>Id.</u> at 420. This approach is consistent

with that of the Second Circuit, which has, in several
decisions exploring the futility exception, looked to the
purposes of the administrative exhaustion doctrine.  <u>See</u>,
<u>e.g.</u>, <u>Kennedy v. Empire Blue Cross and Blue Shield</u>, 989
F.2d 588, 594 (2d Cir. 1993); <u>Davenport v. Harry N. Abrams,</u>
<u>Inc.</u>, 249 F.3d 130, 133 (2d Cir. 2001).

    The <u>Fallick</u> Court enumerated four such purposes:
avoiding frivolous lawsuits and unnecessarily adversarial
proceedings; reducing litigation costs; establishing a
sufficient factual record; and giving the administrator the
opportunity to correct errors or change its position during
administrative proceedings.  <u>Fallick</u>, 162 F.3d at 420-21.
The Second Circuit has also recognized "provid[ing] a
sufficiently clear record of administrative action if
litigation should ensue" as a primary purpose behind the
administrative exhaustion requirement.  <u>Davenport</u>, 249 F.3d
at 133.

    In examining this case in light of the purposes behind
the administrative exhaustion requirement, the Court finds
that Plaintiffs have not established that their failure to
exhaust their administrative remedies should be excused as
futile.  Rather, most of these purposes are served by
requiring administrative exhaustion in the instant
litigation.  In particular, administrative appeals of the

Unexhausted Claims would have allowed Defendants the opportunity to correct errors such as incorrect procedural codes, as they did in several instances. Additionally, pursuing administrative appeals would have created a record that would have supported Plaintiffs' contentions as to the basis for their appeals. In this way, the instant case is distinguishable from Fallick; the Fallick plaintiff had developed an extensive factual record by engaging in a two-year long "triangular dialogue of communications in every direction [with] the State Insurance Department and [the insurance company]" regarding the facts at issue in the litigation. Fallick, 162 F.3d at 417. Here, Plaintiffs have not presented a sufficiently developed factual record for the Unexhausted Claims. In Fallick, the dialogue between the plaintiff, the insurance company, and the state agency, although it did not satisfy the criteria of the administrative appeals process, created a detailed factual record as to the basis of the plaintiff's claims. No such record was created as to Plaintiffs' Unexhausted Claims here such that excusing Plaintiffs' failure to appeal those claims would serve the purposes behind the futility doctrine.

Moreover, as a Sixth Circuit decision, Fallick is not directly binding on this court, particularly in light of

the fact that it has never been cited by the Second Circuit
Court of Appeals.  While it has been cited in three
unpublished decisions in this district, these references
are all string citations regarding broad principles rather
references to the specific facts or reasoning of the
Fallick opinion.  See Fisher v. J.P. Morgan Chase & Co.,
230 F.R.D. 370, 374 (S.D.N.Y. 2005); Spann v. AOL Time
Warner, Inc., 219 F.R.D. 307, 317 (S.D.N.Y. 2003); Jurash
v. Hartford Life Ins. Co., No. 99-8916, 2000 WL 364896
(Apr. 7, 2000).  No court in this district -- or, insofar
as the Court can determine, anywhere else -- has made a
finding of futility as broad as that announced in Fallick
in that no other court has found that a plaintiff made a
clear and positive showing of futility where there existed
examples of successful appeals.  In Fallick, the insurance
company had "reconsidered specific calculation errors with
respect to a number of his claims, [but] it had not altered
the Plan's underlying methodology for calculating the
claims of Plan beneficiaries."  Fallick, 162 F.3d at 415.
This Court respectfully disagrees with the Sixth Circuit's
conclusion that futility can be found in such
circumstances, believing instead that such examples of
successful appeals, even on technical issues rather than on
substantive ones, undermine a plaintiff's ability to make a

clear and positive showing that pursuing administrative remedies would have been futile.  It is undisputed that examples of such successful appeals abound in this litigation.  (Defs.' Statement ¶ 32 (citing Kemper Aff. Exs. 38, 39).)

Although Plaintiffs have presented an issue of fact as to whether the Defendants ever deviate from the PHCS database in calculating the UCR reimbursement rate, Plaintiffs have failed to show that Defendants' alleged refusal to do so demonstrates that all appeals are futile. The core of Plaintiffs' argument in this case -- that the PHCS database is "invalid or an inappropriate basis upon which to make UCR decisions" -- relates not to the preliminary issue of the futility exception to the administrative exhaustion requirement but to the actual merits of this litigation.  (Hufford Aff. ¶ 25.)  The existence of alleged flaws in the PHCS database, and the legality of United Healthcare's alleged sole reliance on that database, do not in and of themselves make out a "'clear and positive showing' that pursuing available administrative remedies would be futile." Kennedy, 989 F.2d at 594 (internal citation omitted).

The Court finds, therefore, that Plaintiffs have failed to show that Defendants' reliance on the PHCS data

in calculating UCR rates entitles Plaintiffs to be excused from ERISA's administrative exhaustion requirement. Particularly in light of Defendants' evidence that some appeals of UCR determinations were granted, Plaintiffs have not shown that seeking to resolve their claims through the administrative process could not have resulted in additional benefits.  They have therefore failed to create an issue of material fact as to the requisite "clear and positive showing" of futility, and Defendant's motion for summary judgment on Plaintiffs' Unexhausted Claims for benefits[14] is GRANTED.

### 5. Exhaustion of Plaintiffs' Fiduciary Duty Claims

Defendants also argue that all "Plaintiffs' claims for breach of fiduciary duty must be dismissed because those claims were never asserted prior to the instant litigation" and therefore were not exhausted.  (Defs.' Reply 12.) Plaintiffs assert that ERISA's administrative exhaustion requirement does not apply to claims for breach of fiduciary duty, noting that that the majority of the circuits do not require administrative exhaustion of such claims.  (Pls.' Mem. in Opp. 59.)  Defendants counter that

---

[14] Defendants' motion for summary judgment is denied to the extent the Unexhausted Claims are for breach of fiduciary duty rather than for benefits; as discussed _infra_ Section II.C.5, administrative exhaustion is not required for bona fide breach of fiduciary duty claims.

the Second Circuit has held to the contrary, requiring that administrative remedies be exhausted for breach of fiduciary duty claims under ERISA.

In the 1989 case on which Defendants rely, the Second Circuit affirmed a district court's denial of leave to amend a complaint to add ERISA claims for breach of fiduciary duty, holding that the proposed amendment would have been futile for several reasons: that the defendants were not fiduciaries of the plan, that the claim had been filed against improper parties, and, finally, that the plaintiff had "made no attempt, as required, to exhaust the administrative remedies provided for under the plan." Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989). More recent developments in the law of this circuit indicate, however, that despite this reference to exhaustion in relation to ERISA fiduciary claims, the question of whether such claims are subject to the administrative exhaustion requirement remains open.

Decisions from six other circuits have held that the administrative exhaustion requirement applies to plan-based ERISA claims -- that is, claims relating to violations of the terms or provisions of the plan at issue -- but not to statutory ERISA claims -- that is, claims that arise from a violation of the statute itself rather than of a plan. See

Smith v. Snydor, 184 F.3d 356, 364-65 (4th Cir. 1999); Chailland v. Brown & Root, Inc., 45 F.3d 947 (5th Cir. 1995); Richards v. General Motors Corp., 991 F.2d 1227 (6th Cir. 1993); Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197 (10th Cir. 1990); Zipf v. American Telephone & Telegraph Co., 799 F.2d 889, 891-92 (3d Cir. 1986); Amaro v. Continental Can Co., 724 F.2d 747, 749-50 (9th Cir. 1984). See also De Pace v. Matsushita Elec. Corp. of Am., 257 F.Supp.2d 543, 557 (E.D.N.Y. 2003) (collecting cases). The Seventh and Eleventh Circuits, however, have declined to distinguish between statutory and plan-based ERISA claims, and instead require exhaustion regardless of the nature of the claim. See Mason v. Continental Group, Inc., 763 F.2d 1219, 1227 (11th Cir. 1985); Kross v. Western Electric Co., 701 F.2d 1238 (7th Cir. 1983).

Despite its earlier reference in Leonelli to administrative exhaustion in connection with fiduciary duty claims, the Second Circuit has explicitly recognized that the question of whether exhaustion is required for statutory as well as plan based claims remains open in this circuit. See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 102 (2d Cir. 2005)(recognizing the existence of a split among the circuits on this question and declining to "here decide whether administrative exhaustion is a prerequisite

to a statutory ERISA claim.").[15]  As the Nechis Court

recognized, "[d]istrict courts in the Second Circuit have

routinely dispensed with the exhaustion prerequisite where

plaintiffs allege a statutory ERISA violation."  Id.

(quoting De Pace, 257 F.Supp.2d at 558).  District courts

have continued to do so subsequent to the Nechis decision.

See, e.g., Richards v. FleetBoston Financial Corp., 427

F.Supp.2d 150, 180 (D. Conn. 2006) (declining to require

exhaustion of administrative remedies where the plaintiff

sought "relief for statutory violations, rather than

violations of the terms of the Amended Plan.")  This Court

agrees with the reasoning of De Pace and Richards, as well

as with that of the Third, Fourth, Fifth, Sixth, Ninth, and

Tenth Circuits, and notes that the Second Circuit has

hinted that it also may do so, observing that it was

"dubious that Nechis's claims may be dismissed for failure

to exhaust administrative remedies[.]" Nechis, 421 F.3d at

100.  The Court declines, therefore, to require

administrative exhaustion of statutory -- as opposed to

plan-based -- ERISA claims.

      The remaining question, therefore, is whether the

---

[15] In noting the existence of an open question in this circuit as to
whether exhaustion is required for statutory ERISA claims, the Second
Circuit did not recognize itself to be disagreeing with Leonelli, the
1989 case in which it mentioned failure to exhaust administrative
remedies as one basis for affirming a district court's denial of leave
to amend a complaint.

ERISA claims for breach of fiduciary duty at issue here are statutory.[16]

Cases in other circuits have examined the question of fiduciary duty claims in this context in some detail. Two circuits have said that exhaustion of fiduciary duty claims under ERISA is required. See Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 825-26 (1st Cir. 1988), cert. denied, 488 U.S. 909 (1988); Simmons v. Wilcox, 911 F.3d 1077, 1081 (5th Cir. 1990). In reaching its conclusion in Drinkwater, the First Circuit reasoned that almost every denial of benefits could be characterized as a breach of fiduciary duty, so exempting such claims from the exhaustion requirement would render the exhaustion requirement meaningless: plaintiffs who had not exhausted could avoid that requirement by artfully pleading their benefits claims as claims for breach of fiduciary duty. Drinkwater, 846 F.2d at 825-26. The Fifth Circuit expressed its agreement with this reasoning in adopting a similar rule. Simmons, 911 F.2d at 1081.

Perhaps because of their reliance on this rationale, both cases have since been interpreted by some courts to apply to narrow circumstances where a claim for breach of

---

[16] Most of the circuit cases holding that exhaustion of statutory claims is not required involved alleged violations of § 510 of ERISA. See Zipf, 799 F.2d at 891-94; Amaro, 724 F.2d at 750-52; Held, 912 F.2d at 1204-05; Chailland, 45 F.3d at 950-51.

fiduciary duty is actually a claim for benefits that is
artfully pled in an attempt to avoid the exhaustion
requirement.  As the Fourth Circuit observed, the logic of
Drinkwater and Simmons applies only to certain types of
fiduciary duty claims: benefit claims that are artfully
pled as fiduciary duty claims in "a naked attempt to
circumvent the exhaustion requirement."  Smith v. Snydor,
184 F.3d 356, 362 (4th Cir. 1999).  Relying on Drinkwater
and Simmons, the Smith Court reasoned that bona fide
fiduciary duty claims can be distinguished from artfully
pled benefits claims: "a claim for breach of fiduciary duty
is actually a claim for benefits where the resolution of
the claim rests upon an interpretation and application of
an *ERISA-regulated plan* rather than upon an interpretation
and application of *ERISA*."  Smith, 184 F.3d at 362(emphasis
in original).  The Fourth Circuit then held that exhaustion
of bona fide fiduciary duty claims -- that is, those based
on a violation of the statute itself and not of the plan --
was not required: "[t]he judicially created exhaustion
requirement does not apply to a claim for breach of
fiduciary duty as defined in ERISA."  Id. at 365.

The Third Circuit has endorsed this rule,
distinguishing bona fide breach of fiduciary duty claims
from artfully pled benefits claims and requiring

administrative exhaustion only of the latter.  See Harrow

v. Prudential Ins. Co., 279 F.3d 244, 253-55 (3d Cir.

2002).  There are indications that the Second Circuit may

be inclined to follow the Fourth Circuit's reasoning.  In

Nechis, the case in which the Second Circuit declined to

decide the question of whether statutory claims must be

exhausted but expressed doubt about requiring exhaustion of

such claims, the plaintiffs' claims included claims for

breach of fiduciary duty.  In discussing whether exhaustion

of such claims would be required, the Nechis Court noted

that these claims were "equitable in nature and do not

involve interpretation of the terms of her plan."  Nechis,

421 F.3d at 102.  The prevailing rule, then, seems to be

that bona fide breach of fiduciary duty claims -- that is,

those that are based on an interpretation of the ERISA

statute rather than of a plan and are not claims for

benefits artfully pled as claims for breach of fiduciary

duty -- are statutory and not subject to the administrative

exhaustion requirement.

     The ERISA-based breach of fiduciary duty claims at

issue in this case are statute-based rather than plan-

based.  Resolution of Plaintiffs' fiduciary duty claims

therefore rests on an interpretation of the ERISA statute

rather than on an interpretation of any of the plans at

issue in this litigation.  There is no allegation that
these claims are claims for benefits artfully pled as
claims for breach of fiduciary duty.  The Court declines,
therefore, to require administrative exhaustion of
Plaintiffs' breach of fiduciary duty claims,[17] and
Defendants' motion for summary judgment on Plaintiffs'
fiduciary duty claims is DENIED.


**D. Standing**

　　　Defendants next argue that they are entitled to
summary judgment as to claims by certain plaintiffs because
those plaintiffs cannot demonstrate standing.  Defendants
assert that the three Provider Plaintiffs lack standing
because they cannot show that they received proper
assignments of benefits claims; that Plaintiffs Ericson,
Marcum, and Colleen Finley lack standing because they have
not shown actual injury; and, finally, that the Association
Plaintiffs lack standing because they cannot meet the three
prongs of the associational standing standard enunciated in
Hunt.

**1. Provider Plaintiffs**

---

[17] The Court notes that, even if the administrative exhaustion
requirement did apply to Plaintiffs' fiduciary duty claims, Plaintiffs
have satisfied that requirement with respect to the 135 Fully Appealed
UCR Claims and Subscriber Plaintiff Mitchell's claims.  Therefore
claims for breach of fiduciary duty would proceed for at least one
plaintiff from each of the four Employer Plans at issue in this
litigation.

Defendants assert that they are entitled to summary judgment on the bulk of the three Provider Plaintiffs' ERISA claims because those plaintiffs have "failed to produce actual assignments on which they predicate the vast majority of their claims." (Defs.' Mem. in Support 25.) Defendants concede that, during Stage One discovery, Plaintiffs produced "sufficient proof of assignment" as to 2,153 of their 21,741 claims. As Plaintiffs point out, these 2,153 undisputedly assigned claims include claims that were assigned to each of the three Provider Plaintiffs; as a result, all three of the Provider Plaintiffs have standing to proceed to merits discovery at least as to the undisputedly assigned claims. (Pls.' Mem. in Opp. 61.) Defendants nonetheless assert that because the Provider Plaintiffs have failed to produce written assignments as to the remaining 19,588 claims Defendants are entitled to summary judgment on those claims because Plaintiffs "cannot satisfy their burden at trial of proving the existence or terms of actual assignments."

It is undisputed that the law of this circuit confers standing to bring certain ERISA claims on "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." Simon v. GE, 263 F.3d 176, 178 (2d Cir. 2001). Nor do the parties disagree that the

plaintiff bears the burden of proving the existence of a valid assignment for purposes of establishing standing. The parties do dispute, however, the means by which a valid assignment may be proven: Defendants contend that Plaintiffs may prove that they received an assignment -- and therefore that they have standing for their ERISA claims -- only if they are "in possession of actual assignments from plan participants." (Defs.' Mem. in Supp. 25.)

Defendants have failed to show, however, that Provider Plaintiffs are so constrained in the means by which they may prove receipt of a valid assignment. Neither case law nor any provision of the plan agreements at issue in this litigation requires that assignments be in writing. In fact, the only case on which Defendants rely for the proposition that "[p]ossession of an actual assignment is essential to the Provider Plaintiffs' standing with regard to each claim" (Defs.' Mem. in Support 27) actually holds that, but for the existence of a nonassignment clause, the plaintiff, a health care provider, "still may be able to prove at trial that his patients assigned their benefit rights to him" despite his failure to produce either a written assignment or evidence of "any agreement with his patients to use their signatures to evince their intent to

execute assignments." <u>Brandoff v. Empire Blue Cross and Blue Shield</u>, 707 N.Y.S.2d 291, 294 (1999).

The Court finds, therefore, that Provider Plaintiffs' failure to produce written assignments for the majority of their claims during Stage One discovery does not preclude their proving the existence of those assignments by some other means during trial. Defendants have failed to meet their burden of showing that there exists no issue of material fact as to whether Provider Plaintiffs obtained valid assignments for the remaining 19,588 claims. Defendants' motion for summary judgment as to those claims on the ground that Provider Plaintiffs lack standing is therefore DENIED.

**2. Subscriber Plaintiffs Ericson, Marcum, and Colleen Finley**

Defendants next argue that they are entitled to summary judgment on certain claims by Plaintiffs Ericson, Marcum, and Colleen Finley because those plaintiffs have not shown actual or threatened injury and therefore lack standing to pursue those claims. (Defs.' Mem. in Supp. 28.)

**a. Background Relating to Exemplar Claims**

During the course of Stage One discovery, Defendants sought discovery that could indicate whether Plaintiffs had

suffered out-of-pocket losses in relation to Defendants'
UCR reimbursement decisions; documents they sought included
Subscriber Plaintiffs' financial records, waivers or
cancellations of charges by the out-of-network health care
providers, and records of communications between Subscriber
Plaintiffs and their providers regarding payment of the
difference between Defendants' UCR reimbursement and the
providers' full billed charge. (Defs.' Statement of
Undisputed Facts Nos. 45-46; Kemper Aff. Ex. 61.)
Plaintiffs objected, and, with the apparent agreement of
the parties, Magistrate Judge Gorenstein ordered Plaintiffs
to produce certain "exemplar" claims for Plaintiffs
Ericson, Marcum, and Colleen Finley wherein "there was a
waiver of payment by the provider or a payment by a
secondary party."  (Kemper Aff. Ex. 62.)  Judge Gorenstein
expressly noted that allowing this discovery would enable
Defendants to present "examples of parties who fit into
these categories" and then to argue in the Stage One
summary judgment motion that "any party that fits into
these categories . . . is going to lack standing."  (Id.)

    Plaintiffs then produced such exemplar claims for
Plaintiffs Ericson, Marcum, and Finley (the "Exemplar
Claims").  For Provider Plaintiff Marcum, Plaintiffs
provided "an example of where the assignor failed to pay

Dr. Marcum the unpaid balance (e.g., the amount above the UCR amount allowed)"; for Provider Plaintiff Ericson, Plaintiffs provided a claim wherein Dr. Ericson "did not bill [the patient] for unpaid amounts since [the patient] is a fellow physician"; for Plaintiff Finley, Plaintiffs provided a claim wherein "Finley was verbally advised that [her physician] wrote off the disallowed $16, and so she did not pay such amount, nor has she been balance billed for such amount." (Kemper Aff. Ex. 64.)

Defendants here seek summary judgment as to those Exemplar Claims because, they argue, Plaintiffs cannot demonstrate actual injury in that they never suffered -- and do not face the threat of suffering -- out-of-pocket loss on those claims. (Defs.' Mem. in Supp. 28.)[18] Plaintiffs respond by asserting that "this attempt at selective dismissal of specific claims is inappropriate at this stage of the litigation." (Pls.' Mem. in Opp. 63.) Such an assertion is somewhat disingenuous, given that both Magistrate Judge Gorenstein and the parties recognized the purpose of using such exemplar claims to be to test

---

[18] The Court notes that Defendants do not appear to seek summary judgment for claims where the medical care provider has not yet collected payment but has not excused payment, either. Discussion of standing in this opinion is confined to claims for which the provider has expressly excused the patient from paying the remainder of the claim. For those claims where the provider has not excused the patient from payment, there likely exists "threatened injury" sufficient to confer standing on the patient.

Defendants' standing argument without engaging in more expansive discovery during Stage One.  It is not premature for the Court to decide now whether there is an issue of material fact as to the standing of Plaintiffs Marcum, Ericson, and Finley to assert the Exemplar Claims.

Plaintiffs proffer three types of alleged "actual or threatened injury" that they argue entitle them to standing to assert the Exemplar Claims even in the absence of an out-of-pocket -- or threatened out-of-pocket -- loss: injury to contract expectations, injury to the relationship between patients and out-of-network physicians, and injury based on breach of fiduciary duty.[19]

**b. The Standing Injury Requirement for Claims Other Than Fiduciary Duty Claims**

"[S]tanding to sue is an essential component" of Article III's "case" or "controversy" requirement.  <u>Jaghory v. New York State Dept. of Educ.</u>, 131 F.3d 326, 330 (2d Cir. 1997).  "Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. . .'" <u>Valley</u>

---

[19] In addition to these three alleged injuries, Plaintiffs assert that the beneficiaries' "contracts do not permit United Healthcare to withhold rightfully due reimbursement to beneficiaries (or their assignees) pending a demonstration of out-of-pocket loss."  (Pls.' Mem. in Opp. 65.)  This argument is inapposite to the question of standing under Article III, which is whether any alleged violation of those contracts caused Plaintiffs "actual or threatened injury."

Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979)).  The alleged injury must be "distinct and palpable . . ."  Warth v. Seldin, 422 U.S. 490, 501 (1997).  There is no "exception to the traditional injury requirement [in standing analysis] in contractual ERISA claims for benefits . . . "  Weiss v. CIGNA Healthcare, Inc., 972 F.Supp. 748, 755 n.7 (S.D.N.Y. 1997).

Plaintiffs argue that both deprivation of contract expectations and harm to the relationship between patients and out-of-network providers constitute injuries-in-fact for purposes of showing standing.  To satisfy the standing requirement, however, a plaintiff must show injury-in-fact that is "distinct and palpable."  Warth, 422 U.S. at 501. Plaintiffs fail to point to any case supporting their argument that effects either on contract expectations or on the relationship between patients and out-of-network medical care providers constitute "actual or threatened injury" for standing purposes.  The only case Plaintiffs cite recognizes that these effects of a denial of benefits are injuries, but it does not do so in the context of standing analysis and therefore does not support Plaintiffs' standing argument.  HCA Health Serv. Of

Georgia, Inc. v. Employers Health Ins. Co., 240 F.3d 982,

1005-06 (11th Cir. 2001).  Such abstract injuries do not

constitute "distinct and palpable" harm for purposes of

standing.

Therefore, summary judgment is GRANTED for the

Exemplar Claims of Plaintiffs Finley, Ericson, and Marcum

except to the extent that they seek injunctive relief for

breach of fiduciary duty; see infra Section II.D.2.c.[20]

**c. The Standing Injury Requirement for Fiduciary Duty
Claims Seeking Injunctive Relief**

Defendants have failed to show, however, that

Plaintiffs Finley, Ericson, and Marcum lack standing to

pursue the Exemplar Claims to the extent those claims seek

injunctive relief for alleged breach of fiduciary duty.

While "[t]he case law does not create an exception to

the traditional injury requirement in contractual ERISA

claims for benefits, . . . it does in fiduciary duty ERISA

claims for prospective relief."  Weiss, 972 F.Supp. at 755

n.7.  The Second Circuit has adopted a "broad view of

participant standing under ERISA," holding that a violation

---

[20] This judgment applies only to those specific Exemplar Claims; the
Court denies Defendants' request that "the Court . . . enter judgment
for Defendants on . . . all other claims for which the Plan Participant
Plaintiffs or the assignors of the Provider Plaintiffs cannot
demonstrate that they have suffered an actual injury." (Defs.' Mem. in
Supp. 30.)  To obtain summary judgment, Defendants bear the burden of
showing that there is no issue of material fact as to whether
Plaintiffs face "actual or threatened injury."  Defendants cannot meet
that burden without presenting additional evidence about particular
claims.

of ERISA § 404 satisfies Article III's injury requirement. Financial Inst. Retirement Fund v. Office of Thrift Supervision, 964 F.2d 142, 149 (2d Cir. 1992). See also Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 200 (2d Cir. 2005). Under the law of this circuit, therefore, an ERISA plaintiff is not required to "demonstrate actual harm in order to have standing to seek *injunctive relief* requiring [a defendant to] satisfy its statutorily-created disclosure or fiduciary responsibilities." Id. at 199 (emphasis in original).

To the extent that the Exemplar Claims seek injunctive relief for breach of fiduciary duty, Plaintiffs Finley, Ericson, and Marcum have presented an issue of material fact as to the injury requirement despite their inability to show out-of-pocket loss and therefore have standing to proceed in those claims.

Therefore, Defendants' motion for summary judgment as to the Exemplar Claims is DENIED to the extent those claims seek injunctive relief for alleged breach of fiduciary duty and is GRANTED in all other respects.

**3. Associational Standing**

Defendants next seek summary judgment as to all ERISA

claims by the Medical Association Plaintiffs on the ground
that those Plaintiffs lack standing.  In its October 2002
Order, this Court found that the Medical Association
Plaintiffs lacked standing to pursue claims brought on
their own behalf but allowed the claims brought on behalf
of the Medical Associations' members to proceed to
discovery on the question of whether the Association
Plaintiffs could demonstrate representational standing.
Oct. 2002 Order at *3-4.  Defendants here move for summary
judgment on the representational claims, arguing that Stage
One discovery has revealed that there is no issue of
material fact as to whether the Association Plaintiffs have
representational standing.

     As this Court noted in the October 2002 Order, "[t]he
Supreme Court has held that an organization may have
standing under certain conditions solely as a
representative of its members, even absent an injury to
itself."  Oct. 2002 Order at *3 (citing Int'l Union, United
Auto. Workers v. Brock, 477 U.S. 274, 281 (1988)).
Plaintiffs and Defendants agree that the test for whether
an organization has representational standing is three-
pronged: first, whether "its members would otherwise have
standing to sue in their own right;" second, whether "the
interests it seeks to protect are germane to the

organization's purpose;" and, third, whether "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Hunt v. Washington State Apple Adver. Comm'n</u>, 342 U.S. 333, 343 (1977); <u>see also</u> <u>Building and Const. Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc.</u>, 448 F.3d 138, 144 (2d Cir. 2006). Defendants here argue that the Medical Association Plaintiffs fail both the second and third prongs of the <u>Hunt</u> test.

**a. The Second Prong: Germaneness of Interests to Organization's Purpose**

Under the second prong of the <u>Hunt</u> test, "the interests [the organization] seeks to protect [must be] germane to the organization's purpose" in order for the organization to establish representational standing. <u>Hunt</u>, 342 U.S. at 343. The Second Circuit recently elaborated on the meaning of this second prong, expressing its agreement with the reasoning of the D.C. Circuit and the Ninth Circuit in holding that the proper approach to the germaneness issue is for a court to "determine whether an association's lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the

association's knowledge and experience." Building and

Const. Trades Council of Buffalo, 448 F.3d at 149 (citing

Humane Soc'y of the United States v. Hodel, 840 F.2d 45, 58

(D.C. Cir. 1988)).

Defendants urge the Court to apply a slightly

different standard for germaneness, arguing that, based on

language in a footnote from the D.C. Circuit's Hodel

decision, the germaneness requirement is not met unless the

association plaintiffs' claims affect "a critical mass of

association members." (Defs.' Mem. in Supp. 31 (citing

Hodel, 840 F.2d at 58 n.21).) Even the Hodel Court did not

apply such a stringent standard: the footnote expresses the

court's "understanding that prong two guarantees that the

grievances expressed in a suit apply to a critical mass of

association members" in explaining another case rather than

in reaching its own decision. Hodel, 840 F.2d at 58, n.21.

The Hodel Court neither adopts nor applies the "critical

mass" language in its analysis of whether the germaneness

requirement is satisfied. Moreover, the second prong of

the Hunt standard is widely recognized -- even by the Hodel

court -- to be "undemanding." Id. at 58. Perhaps for this

reason, no federal court has applied the "critical mass"

test here urged by Defendants. The Second Circuit's

extensive exploration of the Hodel decision does not even

refer to that decision's "critical mass" language. The
Court finds, therefore, that Defendant's "critical mass"
standard for germaneness is unsupported, and applies
instead the standard recently explained by the Second
Circuit: "whether an association's lawsuit would, if
successful, reasonably tend to further the general
interests that individual members sought to vindicate in
joining the association and whether the lawsuit bears a
reasonable connection to the association's knowledge and
experience." Building and Const. Trades Council of
Buffalo, 448 F.3d at 149 (citation omitted).[21]

Defendants have failed to show that there is no issue
of fact as to either of these points. The relationship
between medical care providers and insurance companies, and
the compensation of those medical care providers, including
decisions relating to the UCR reimbursement rate, are
interests that may prompt individual members to join
organizations such as the Medical Association Plaintiffs,
and success in this lawsuit would vindicate those
interests. Furthermore, these issues, which constitute the
subject matter of this lawsuit, are reasonably related to

---

[21] The Court notes, however, that there likely would be an issue of fact
as to whether Association Plaintiffs could meet the "critical mass"
standard; as Plaintiffs point out, "the declaratory and injunctive
relief sought by the Medical Association Plaintiffs will inure to the
benefit of each of their members with equitable claims." (Pls.' Mem.
in Opp. 69.)

the "knowledge and experience" of the Medical Association
Plaintiffs.  The Court finds, therefore, that the Medical
Association Plaintiffs have satisfied the second prong of
the Hunt test for purposes of this summary judgment motion.

**b. The Third Prong: Participation of Individual Members**

The third prong of the Hunt test for associational
standing is that "neither the claim asserted nor the relief
requested requires the participation of individual members
in the lawsuit."  Hunt, 432 U.S. at 343.  In the October
2002 Order, the Court expressed its doubts about "whether
the Medical Association Plaintiffs will be able to
establish their representative claims with limited
individual participation" but, in light of the procedural
posture at that time, "accept[ed] the fact that it is
possible."  Oct. 2002 Order at *3.  Following Stage One
discovery, Defendants now contend that the Medical
Association Plaintiffs cannot pursue their ERISA claims
without individual member participation because such
participation is necessary in order for the Association
Plaintiffs to demonstrate, *inter alia*, exhaustion of
administrative remedies and receipt of valid assignments
from plan participants.  The Court agrees.

As discussed in detail supra Section II.C.1, ERISA
requires "that plan participants avail themselves of

[administrative appeal] procedures before turning to litigation." Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 219 (2d Cir. 2006) (citations omitted). Courts require that a plaintiff show that the ERISA claim has been administratively exhausted or that administrative exhaustion of that claim would be futile. See Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993). Defendants argue that individualized member participation would be required to demonstrate exhaustion of administrative remedies. Plaintiffs counter that this argument "may be disposed of easily," directing the Court to the section of their brief arguing that exhaustion of administrative remedies should be excused as futile. (Pls.' Mem. in Opp. 70.) The Court has found, however, that the futility exception does not apply in this case, see supra Section II.C.4. Consequently, Plaintiffs must show that they did exhaust their administrative remedies for each of the ERISA claims for benefits at issue in this litigation, and Provider Plaintiffs cannot do this without the participation of their members, who must provide detailed information regarding claims and appeals in order to show administrative exhaustion. The detailed and fact-specific inquiry required for a determination of whether ERISA's administrative exhaustion requirement has been satisfied

essentially forecloses an association's ability to proceed in such cases without individualized member participation.[22]

Because the ERISA administrative exhaustion requirement does not apply to Plaintiffs' bona fide breach of fiduciary claims, see supra Section II.5, it alone would not preclude the Medical Association Plaintiffs' satisfying the third prong of the Hunt test. However, the Medical Association Plaintiffs must still show receipt of valid assignments to proceed in their ERISA claims, even for breach of fiduciary duty. The Court finds that the Medical Association Plaintiffs could not make such a detailed and fact-intensive showing without the participation of their individual members.

Because a showing is required that administrative remedies have been exhausted and that assignments have been received, and because to make such showings the Medical Association Plaintiffs would be forced to rely on participation by their members, the Court finds that the Medical Association Plaintiffs fail the third prong of the Hunt test for their ERISA claims. Defendants' motion for

---

[22] Plaintiffs also assert that "since ERISA explicitly permits a claim to clarify future benefits, exhaustion as a prerequisite to such injunctive relief is clearly unnecessary." (Pls.' Mem. in Opp. 70.) Plaintiffs point to no law supporting this argument, and courts in this jurisdiction have held otherwise. See Schein v. News Am. Publishing, Inc., No. 89 Civ. 0052, 1989 WL 56255, *2 (S.D.N.Y. May 23, 1989) (holding that the administrative exhaustion requirement applies to actions seeking declaratory relief).

summary judgment on all the ERISA claims of the Medical Association Plaintiffs is therefore GRANTED.[23]

## E. Proper Defendants

Defendants next argue that they are entitled to summary judgment because Plaintiffs "cannot maintain ERISA claims brought against the wrong parties." (Defs.' Mem. in Supp. 33.) In ordering Stage One discovery, the Court observed that it would allow both sides to resolve not only the issues of administrative exhaustion and standing for various parties, but also of who constituted "the proper defendants" in this action. Oct. 2002 Order at * 2. After having conducted this discovery, Defendants now assert that summary judgment should be granted for all of Plaintiffs' ERISA claims against Defendant Ingenix and for all of Plaintiffs' ERISA claims for monetary benefits against all United Defendants.

## 1. ERISA Claims against Ingenix

Defendants first urge the Court to grant summary judgment for "all Plaintiffs' ERISA claims against Ingenix because it is not a proper party in this action" with respect to Plaintiffs' ERISA claims for monetary benefits and breach of fiduciary duty. (Defs.' Mem. in Supp. 34.)

---

[23] The Medical Association Plaintiffs remain in this litigation for their non-ERISA claims.

Ingenix is a wholly-owned subsidiary of United HealthCare, and in their Third Amended Complaint Plaintiffs define United HealthCare to include Ingenix. (TAC ¶ 1, 23.) Accordingly, as it now stands, each of Plaintiffs' claims against United HealthCare is also asserted against Ingenix.

**a. ERISA Claims against Ingenix for Monetary Benefits**

First, with regard to Plaintiffs' ERISA claims for monetary benefits, Defendants argue that such claims cannot be maintained against Ingenix because it is not an Employer Plan or an ERISA Plan Administrator. (Defs.' Mem. in Supp. 35.) It is well-settled -- both within this Circuit and within the instant litigation -- that claims for monetary benefits under ERISA § 502(a)(1)(B) may be asserted only against "the plan, or the administrators or trustees of the plan." Oct. 2002 Order at *5 (citing AMA v. UHC, No. 00 Civ. 2800, 2001 WL 863561, at *5 (S.D.N.Y. July 31, 2001); Chapman v. Choicecare Long Island Term Disability Plan, 288 F.3d 506, 620 (2d Cir. 2002); Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir. 1998); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989)). Plaintiffs, in apparent recognition of this point, "disclaim any 502(a)(1)(B) benefits claim against Ingenix" in their opposition papers. (Pls.' Mem. in Opp. 71.) For this reason, and because there is no issue of fact as to whether

Ingenix is a plan, administrator, or trustee of any of the
Employer Plans at issue in this litigation, Defendants'
motion for summary judgment is GRANTED as to Plaintiffs'
ERISA claims for monetary benefits against Ingenix.

**b. ERISA Claims against Ingenix for Breach of Fiduciary
Duty**

Second, with regard to Plaintiffs' ERISA claims for
breach of fiduciary duty against Ingenix, Defendants assert
that they are entitled to summary judgment "because Ingenix
is not a named or functional fiduciary as to any of
Plaintiffs' Employer Plans." (Defs.' Mem. in Supp. 36.)
Plaintiffs concede that Ingenix is not a named fiduciary
for the Employer Plans but argue that they have introduced
evidence to create an issue of material fact as to whether
Ingenix is a functional fiduciary for the Employer Plans.
Plaintiffs contend that Defendant Ingenix is a functional
fiduciary and therefore a proper defendant to their ERISA
claims for breach of fiduciary duty because it exercises
discretionary "authority and control respecting plan
management or assets" in two ways: first, through "its
creation and sale of PHCS data which substantially
determine plan reimbursements," and, second, through its
actions in defense of the "PHCS database, methodology, and
reimbursement decisions, including through direct

communications with beneficiaries on behalf of its United Healthcare parent and affiliates."  (Pls.' Mem. in Opp. 71.)

Under Section 3(21)(A) of ERISA, a person is a fiduciary with respect to a plan when, <u>inter alia</u>, "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .  or . . . has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A). Thus, as the Second Circuit has observed, "whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held."  <u>Blatt v. Marshall and Lassman</u>, 812 F.2d 810, 812 (2d Cir. 1987).  In assessing whether an entity or individual is a functional fiduciary under ERISA, courts distinguish between those who "exercise . . . discretionary authority or control over plan management or administration," <u>Siskind v. Sperry Ret. Program, Unisys</u>, 47 F.3d 498, 505 (2d Cir. 1996), and those who "perform[ ] purely ministerial functions for a benefit plan," <u>Blatt</u>, 812 F.3d at 813 (citation omitted).

Those who carry out ministerial functions -- that is,

functions that do not involve the exercise of discretion or control -- do not qualify as ERISA fiduciaries. Id. (citing 29 C.F.R. § 2509.75-8); see also Geller v. County Line Auto Sales, Inc., 86 F.3d 18, 21 (2d Cir. 1996). "Such ministerial functions include the application of rules determining eligibility for participation, calculation of services and benefits, and collection of contributions." Blatt, 812 F.2d at 812. However, those who perform functions that do involve the exercise of discretion or control over the management of a plan, the management or disposition of its assets, or the administration of a plan qualify as fiduciaries for purposes of ERISA even if they do not have absolute discretion over the benefit plan. 29 U.S.C. § 1002(21)(A). As the Second Circuit has explained, "[a]n entity need not have absolute discretion with respect to a benefit plan in order to be considered a fiduciary; rather, fiduciary status exists with respect to any activity enumerated in the statute over which the entity exercises discretion or control." Blatt, 812 F.2d at 812.

Plaintiffs assert that Defendant Ingenix is a functional fiduciary and therefore a proper defendant to their ERISA claims for breach of fiduciary duty because, inter alia, it exercises discretionary "authority and

control respecting plan management or assets" through "its creation and sale of PHCS data which substantially determine plan reimbursements . . . " (Pls.' Mem. in Opp. 71.) Defendants counter that the creation and dissemination of the PHCS data is, if anything, a mere recommendation rather than an exercise of discretionary authority or control because the ultimate decision rests with the Plans or their administrators (rather than Defendant Ingenix), who determine what percentage of the PHCS figure to reimburse and whether to depart from that "recommended" figure in reimbursement decisions.

The exact process by which UCR is determined for each of the plans is a question largely beyond the scope of Stage One discovery, which was "limited to determining the proper parties in this action as opposed to the merits of the case." Oct. 2002 Order at *2. While the question of whether Defendant Ingenix is a proper party is appropriately raised here, the answer to that question is entwined with facts relating to the merits of this case and therefore not yet adequately explored. The Court thus finds that at this point Defendants have failed to show that there is no issue of material fact as to whether Defendant Ingenix functioned as a fiduciary for the plans. Whether Defendant Ingenix's role in creating the PHCS

figure is a simple "calculation of benefits" -- and therefore a ministerial function -- or an act of discretionary "authority or control respecting management or disposition of [a plan's] assets" that gives rise to fiduciary status is a question of fact that cannot be resolved in this Stage One summary judgment motion.[24]

Defendants' motion to for summary judgment as to Plaintiffs' ERISA fiduciary duty claims against Defendant Ingenix is therefore DENIED, although Defendants may reassert it following merits discovery.[25]

**2. ERISA Benefits Claims against United Defendants**

Finally, Defendants seek summary judgment in their favor for all Plaintiffs' ERISA benefits claims against all United Defendants because "none of the United Defendants is the Plan or the plan administrator" of the Employer Plans at issue in this action. (Defs.' Mem. in Supp. 40.)

As this Court has observed in two previous decisions in this litigation, "the law in the Second Circuit is very clear -- a claim for benefits can be brought against the

---

[24] Plaintiffs' other asserted basis for arguing that Defendant Ingenix functioned as a fiduciary is that Ingenix representatives communicated directly with beneficiaries regarding benefits decisions. (Pls.' Mem. in Opp. 74.) The Court need not reach the question of whether this is sufficient to give rise to fiduciary status.

[25] Because Plaintiffs have withdrawn their ERISA claims for benefits against Ingenix and because the Court finds that Plaintiffs are entitled to proceed against Ingenix with their remaining ERISA claims for breach of fiduciary duty, it does not reach the question of whether Ingenix could be liable as an alter ego of United Healthcare.

plan, or the administrators and trustees of the plan."
Oct. 2002 Order at *5 (citing <u>AMA v. UHC</u>, No. 00 Civ. 2800,
2001 WL 863561, at *5 (S.D.N.Y. July 31, 2001); <u>Chapman v.
Choicecare Long Island Term Disability Plan</u>, 288 F.3d 506,
620 (2d Cir. 2002); <u>Crocco v. Xerox Corp.</u>, 137 F.3d 105,
107 (2d Cir. 1998); <u>Leonelli v. Pennwalt Corp.</u>, 887 F.2d
1195, 1199 (2d Cir. 1989)).  In its October 2002 decision
ordering discovery to determine who served as the plan
administrators for the four Employer Plans at issue in this
litigation, this Court also held that insurance companies,
even if not designated as plan administrators, could be
sued in that capacity if they "actually controlled the
distribution of funds and decided whether or not to grant
benefits under one of the plans . . ." Oct. 2002 Order at
*6 (citing <u>Sheehan v. Metro. Life Ins. Co.</u>, No. 01 Civ.
9182 (CSH), 2002 WL 1424592 (S.D.N.Y. June 28, 2002)).

In denying Defendants' subsequent motion for
reconsideration, this Court reaffirmed its understanding
that an insurance company could, by means of certain
actions, assume the mantle of de facto plan administrator
and thereby be subject to ERISA claims for monetary
benefits, and noted its belief that such understanding was
not inconsistent with Second Circuit precedent because
"specific facts may take a case out of the black letter

rule of <u>Crocco</u>." <u>Am. Med. Assn. v. United Healthcare,</u>

<u>Inc.</u>, No. 00-2800, 2003 WL 348963, *1 (S.D.N.Y. Feb. 7,

2003). As the Court then emphasized, "the time to address

the issue [of whether any of the United Defendants may be

sued for benefits as a de facto plan administrator] is

after the relevant discovery is complete." <u>Id.</u> at *2.

**a. ERISA Benefits Claims against United Defendants for the
American Airlines, Osram, and Chase Plans**

Defendants now present evidence obtained during Stage

One discovery as to "the identities of de jure

administrators" for three of the four Employer Plans,

pointing to plan documents identifying American Airlines as

the ERISA administrator of the American Airlines Plan,

Osram Sylvania as administrator for the Osram Plan, and

Chase Manhattan Bank as the designated administrator of the

Chase Manhattan Plan. (Defs.' Reply 47, Kemper Exs. 1, 2,

3.) Plaintiffs do not dispute that these entities are the

designated plan administrators for the American Airlines,

Osram, and Chase Manhattan Plans,[26] instead arguing that

United Defendants were de facto administrators for each of

these three plans and that the existence of a designated

plan administrator does not preclude claims for benefits

against a de facto administrator.

---

[26] The parties do dispute who is designated as the plan administrator
for the PEC Plan. See <u>infra</u> Section II.E.2.b.

The Second Circuit, however, has rejected this argument, holding that claims for benefits under ERISA § 502(a)(1)(B) may not be maintained against a de facto administrator when a designated administrator has been named for the plan.  See Crocco, 137 F.3d at 107; Lee, 991 F.2d at 1010.  In both Lee and Crocco, the Second Circuit cited with approval the Tenth Circuit's decision in McKinsey v. Sentry Ins. Co., 986 F.2d 401 (10th Cir. 1993), which relied on the unambiguous statutory language in reaching its conclusion that de facto administrators could not be sued for monetary benefits when the plan had a designated administrator: "[29 U.S.C. §] 1002(16)(A) provides that if a plan specifically designates a plan administrator, that individual or entity is the plan administrator for purposes of ERISA."  McKinsey, 986 F.2d at 404.

In this case, as in Crocco, the underlying plan documents for these three of the four Employer Plans specifically identify the designated administrators for each plan.  While Plaintiffs present facts to make a convincing showing that United Defendants and their representatives played a significant role in decisions regarding benefits and in communicating about those decisions with plan beneficiaries, Plaintiffs do not

dispute that the American Airlines, Osram, and Chase Plans each designated a plan administrator other than one of the United Defendants.  The facts regarding the extent of United Defendants' involvement in and control or authority over benefits decisions may give rise to functional fiduciary status and are therefore relevant to Plaintiffs' ERISA breach of fiduciary duty claims, but whether they are sufficient to create an issue of fact regarding whether United Defendants served as de facto administrators of any of these three plans is immaterial in light of the undisputed fact that each of these three plans designated a plan administrator.

In light of the undisputed fact that the American Airlines, Osram Sylvania, and Chase Manhattan Plans all have designated administrators other than United Defendants, Defendants' motion for summary judgment on Plaintiffs' claims against them for monetary benefits under ERISA § 502(a)(1)(B) is GRANTED in relation to those three plans.

**b. ERISA Benefits Claims against United Defendants for the PEC Plan**

While the law regarding parties against whom claims for monetary benefits may be brought is the same for all four Employer Plans -- that is, such claims may not be

sustained against a de facto administrator when a plan has a designated administrator -- the facts uncovered during Stage One discovery are slightly different with respect to the PEC Plan. Unlike for the American Airlines, Osram, and Chase Plans, for the PEC Plan there exists a factual dispute as to who, if anyone, is designated as the plan administrator.

Plaintiffs contend that United Healthcare of Minnesota is designated as the plan administrator on the plan certificate and that United Healthcare serves as a de facto administrator for the PEC Plan. (Pls.' Mem. in Opp. 79-80.) Defendants assert that the designation on the PEC certificate of coverage was a mere "license[] to perform third party administrative claims processing services" rather than a designation of United Healthcare of Minnesota as the plan's ERISA plan administrator. (Defs.' Mem. in Reply 49.)

In addition to this factual dispute regarding who is the designated ERISA plan administrator, Plaintiffs also assert that United Healthcare functioned as a de facto administrator for the PEC Plan by "grant[ing] or den[ying] benefits, mak[ing] UCR determinations, interface[ing] with beneficiaries who have questions, and decide[ing] appeals." (Pls.' Mem. in Opp. 80.) As discussed supra Section

II.E.2, in the absence of a designated plan administrator, claims for benefits may be maintained against de facto administrators who satisfy certain criteria. Whether United Healthcare's actions in relation to the PEC Plan qualify it as a de facto administrator is a question of fact.

The Court finds that Plaintiffs have created an issue of fact regarding who is designated as the ERISA plan administrator for the PEC Plan and whether, if there is no such designated administrator, United Healthcare is a de facto administrator for that plan. Defendants' motion for summary judgment as to Plaintiffs' ERISA claims for benefits relating to the PEC Plan is therefore DENIED.


## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment regarding the Stage One issues is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Plaintiffs' Unexhausted Claims for benefits under ERISA, Plaintiffs' Exemplar Claims for benefits under ERISA, the Medical Association Plaintiffs' claims for benefits and for breach of fiduciary duty under ERISA, Plaintiffs' ERISA claims for monetary benefits against Ingenix, and Plaintiffs' ERISA claims for monetary benefits against

United Defendants in relation to the American Airlines, Chase, and Osram Plans; the motion is DENIED in all other respects.

SO ORDERED.

Dated: June 15, 2007

Lawrence M. McKenna
U.S.D.J.