UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x

THE AMERICAN MEDICAL ASSOCIATION,    :
et al.,
                                     :

                Plaintiffs,          :      00 Civ. 2800 (LMM)

     - against -                     :      MEMORANDUM AND ORDER
                                     :      (Corrected and not redacted)
UNITED HEALTHCARE CORPORATION,
et al.,                              :

                Defendants.          :

-----------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/01/09

McKENNA, D.J.,

                              1.

     In a Memorandum and Order dated May 7, 2009 (filed
unredacted under seal, and later redacted and filed in the open
file), Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800,
2009 WL 1437819 (S.D.N.Y. May 19, 2009), the Court requested the
parties to provide further information on two factual matters, the
"Delta" and the expected size of the plaintiff class.  The Court
defined the Delta as "the difference between all of the bills for
out-of-network services or supplies submitted to defendants [and]
all of the amounts allowed." Id. at *4.

     At a hearing held on September 14, 2009, and in
contemporaneous and subsequent written submissions, the parties
have presented information which (together with information
previously presented during a hearing held on March 30 and 31, and
April 1, 2, 3, 6 and 16, 2009, and earlier written submissions) has

given the Court an adequate basis upon which to resolve the issue
whether the settlement proposed by those plaintiffs represented by
the Pomerantz law firm, and opposed by those plaintiffs represented
by the Wilentz law firm, should be preliminarily approved.   It
should be.

2.

A proposed settlement of a class action should be
preliminarily approved where it "appears to be the product of
serious, informed, non-collusive negotiations, has no obvious
deficiencies, does not improperly grant preferential treatment to
class representatives or segments of the class and falls within the
range of possible approval."   In re Nasdaq Market-Makers Antitrust
Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citation omitted).
Where (as here) "a settlement is negotiated prior to class
certification . . . it is subject to a higher degree of scrutiny in
assessing its fairness."   D'Amato v. Deutsche Bank, 236 F.3d 78, 85
(2d Cir. 2001).   The proponents of the proposed settlement have
shown that the settlement should, under these standards, be given
preliminary approval.

3.

The opponents of the settlement have devoted a large part
of their presentation to expansion of the Delta.   As of May 7,
2009, the proponents of the settlement had taken the position that
the Delta was $4.3 billion (through April 30, 2009), and the

2

opponents that it was $4.8 billion (through the same date).  In
September of 2009, the opponents asserted a revised Delta of about
$10.3 billion (not including interest, which they contend should be
included in any Delta).  (Goldstein Aff., Sept. 9, 2009, Attach.
10.)  More recently, the opponents have filed papers which again
recalculate their Delta, now to $26.4 billion.   (Non-Settling
Plaintiffs' Response to Rebuttal and Supplemental Offer of Proof
with Regard to the UHC Delta, Oct. 1, 2009 ("October Offer"),
Attach. 17.)

          It is necessary to put the Delta concept in perspective.
A Delta is not an element that must be established by competent
proof if a class action is to be approved, preliminarily or
finally.  It is not one of the factors laid down in City of Detroit
v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).  It may be
seen as a sort of sub-factor of one of the Grinnell factors -- "the
range of reasonableness of the settlement fund in light of the best
possible recovery," 495 F.2d at 463 -- and involves counsels'
judgment as to what the range of the best possible recovery might
be, although it is not meant to precisely represent the amount of
such a recovery; it is rather a boundary beyond which damages do
not likely go.  It does not determine the reasonableness of the
settlement, which implicates all of the nine Grinnell factors, nor
does it take into account those other factors; it may be used as a
beginning.

The Court has considered the parties' voluminous submissions and oral presentations regarding the Delta, and finds that Dr. Slottje's estimate of $4.76 billion (through the end of 2009) (Corrected Aff., Sept. 10, 2009 ("Corr. Aff."), ¶ 4) is the most reasonable one before the Court. The Court does not find the objectors' proposed additions for omitted reason codes, omitted facility claims, omitted data platforms, omitted pre-acquisition Delta, and reimbursement policies (October Offer, Attach. 17) persuasive. The Court also accepts Dr. Slottje's estimate of the size of the settlement class as approximately 21.11 million. (Corr. Aff. ¶ 4.)

**4.**

Opponents argue that certain releases to be obtained in the settlement are too broad, in that there are claims within the case for which class members will not recover under the proposed settlement, which claims will, nevertheless, be released, e.g., claims by subscribers to health care plans acquired by UHC, which claims accrued prior to such acquisition. (See Transcript, Sept. 14, 2009, at 52-55, 90-91, and 94-95.) The proponents say, in substance, that they need to give defendants total peace to get the very large settlement they are getting, while opponents urge that to obtain releases without payment is prohibited by National Super Spuds, Inc. v. New York Mercantile Exchange, 660 F.2d 9 (2d Cir. 1981).

National Super Spuds does not preclude the release of any of the claims that will be released. "The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107 (2d Cir. 2005) (quoting TBK Partners, Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir. 1982)) (footnote omitted).

The present case comes within what Wal-Mart permits. There, objection was taken to the fact that, while the settlement involved the payment of money damages to members of the class harmed by tying conduct in violation of the antitrust laws, the releases given in the settlement covered not only tying but also a horizontal boycott, a different form of antitrust violation for which no monetary payments were provided. Wal-Mart, 396 F.3d at 108. The Third Circuit's approach is quite similar. See In re The Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 326 (3d Cir. 1998).

In the present case, pre-acquisition claims, for example, are a part of the same factual predicate as the under-reimbursement of the other claims. The parallel with the two factually differing antitrust claims discussed in Wal-Mart, supra, is applicable.

It is also very much to the point that settlement class members will be made aware of what sort of claims for reimbursement they can submit and what claims they are releasing without reimbursement, and that they may opt out if they choose to do so. See National Super Spuds, 660 F.2d at 19.

Where a claim is released under the "identical factual predicate" line of cases, there must be "adequacy of representation." Wal-Mart, 396 F.3d at 106-07. Objectors, while complaining of what they regard as the smallness of the settlement, do not make a case that proponents' counsel are at fault in not pursuing relief under such claims as will be released although not paid. Where, as here, in the judgment of experienced and capable counsel, those claims should not be pursued, it is not the Court's place to require them to do so.

For the foregoing reasons, the Court, looking at the proposed settlement as just that -- a settlement, where "'[n]o part of the consideration on either side is keyed to any specific part of the consideration of the other. Each side gives up a number of things. This is the way settlements usually work.'" Wal-Mart, 396 F.3d at 113 (quoting In re Gen. Am. Life Ins. Co. Sales Practices Litig., 357 F.3d 800, 805 (8th Cir. 2004)) -- finds that the

proposed releases are not too broad (and that the Delta need not be increased because of any unpaid but released claims).[1]

### 5.

Proponents of the settlement argue that the Delta, after reduction by 20% for deductibles and co-insurance, should be reduced further by 60% because "approximately 60% of [UHC's] entire commercial healthcare business is with self-funded plans, where [UHC] processes the claims, but the benefits are paid from the assets of the employer." (Settling Pls. Response to Objectors' Supplemental Brief in Opposition to Motion for Preliminary Approval, Oct. 20, 2009 ("Non-Settling Pls. Supp. Brief"), at 25.)

In a decision on a motion for summary judgment made by defendants after the close of Stage One discovery, <u>Am. Med. Ass'n v. United Healthcare Corp.</u>, No. 00 Civ. 2800, 2007 WL 1771498 (S.D.N.Y. June 18, 2007), this Court, among other things, granted summary judgment in favor of defendants dismissing plaintiffs' claims against three plans (American Airlines, Osram Sylvania and Chase Manhattan), all with plan administrators other than UHC. <u>Id.</u> at *24-26. While plaintiffs argued that UHC was responsible as the

---

[1] Objectors have raised an issue about the release of non-party insurance carriers through the settlement. Proponents have explained that the release in question "merely prevents any further challenges from being raised against any party arising from the UHC claims that are being settled in this action. Thus, if a UHC subscriber had a UCR reduction as a result of his or her UHC health care policy, the subscriber is not only releasing UC for this claim, but also any other party who may have been involved for <u>that same claim</u>." (Settling Plaintiffs' Supplemental Submission in Support of Motion for Preliminary Approval, Sept. 1, 2009, at 20-21.) That is permissible.

de facto administrator for each of such plans, the Court disagreed, because "[t]he Second Circuit . . . has rejected this argument, holding that claims for benefits under ERISA § 502(a)(1)(B) may not be maintained against a de facto administrator when a designated administrator has been named for the plan." Id. at *25 (citing Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir. 1998) and Lee v. Burkhart, 991 F.2d 1004, 1010 (2d Cir. 1993)). That is now law of the case.

Objectors' response focuses on the claim that UHC has "expressly asserted that it functions as a designated ERISA 'administrator' and 'fiduciary' for self-funded ASO [i.e., administrative service only] plans." (Non-Settling Pls. Supp. Brief, at 23 (citing AutoNation, Inc. v. United Healthcare Ins. Co., 423 F. Supp. 2d 1265 (S.D. Fla. 2006)).) Objectors quote two UHC briefs submitted in the AutoNation case (in support of a UHC motion for dismissal): in one, UHC refers to its "fiduciary obligation of the plan administrator" to participants and beneficiaries, "specifically, to provide them with benefits authorized by the plan" (Non-Settling Pls. Supp. Brief, at 23 (quoting Appendix, Ex. M)); the other is to the same effect (id., Ex. N).

In fact, in one of the briefs submitted by UHC in AutoNation cited by opponents, UHC also stated that AutoNation Benefits Company, Inc. (one of the plaintiffs in the Florida case)

8

retained full responsibility as Plan Administrator for the final review of denied claims and discretionary authority to construe and interpret the terms of the Plan and to make formal binding determinations concerning the availability of Plan benefits. (Id., Ex. M, at n.6.)  UHC did not admit in AutoNation that it was the designated plan administrator, and opponents have not made a showing that it should be treated as such in the present context.

The Court concludes that a reduction of the Delta by approximately 60%, as proposed by proponents, is reasonable and may be applied here.

### 6.

"[A] proposed settlement cannot be judged without reference to the strength of plaintiffs' claims.  'The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" Grinnell, 495 F.2d at 455 (quoting West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1085 (2d Cir. 1971)) (other citations omitted). "In the exercise of his discretion, the most significant factor for the district judge is the strength of plaintiffs' case balanced against the settlement offer."  In re Traffic Executive Ass'n-E. R.Rs. v. Long Island R.R. Co., 627 F.2d 631, 633 (2d Cir. 1980) (citing West Virginia, 440 F.2d at 1085).

There are considerable problems facing plaintiffs should they choose to proceed to trial.

In the first place, they will have to prove that the Ingenix databases are in fact, flawed, as alleged.  That was not established in McCoy v. Health Net, Inc., 569 F. Supp. 2d 448 (D. N.J. 2008), as this Court has previously pointed out, see Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800, 2009 WL 1437819, at *5 (S.D.N.Y. May 19, 2009), and the Court has not been made aware of any decision which has established that fact.  The challenged UCR data will vary geographically and, no doubt, with time as well.  The effort will obviously be a quite difficult and time consuming one.

There are real issues concerning the exhaustion of administrative remedies, a general requirement in cases seeking recovery of ERISA benefits.  Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 219 (2d Cir. 2006).  Under this rule, this Court, in 2007, granted summary judgment in favor of defendants on this issue, on a large number of claims.  Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800, 2007 WL 1771498, at *4-13 (S.D.N.Y. June 18, 2007).  Exhaustion issues might also create an issue as to class certification, if raised.

There is also an issue as to whether claimants who have not suffered out-of-pocket losses as have standing to seek recovery.  In 2007, the Court granted summary judgment, on standing grounds, in favor of defendants dismissing the action against

several plaintiffs. <u>Id.</u> at *16-18.[2]   (Again, out-of-pocket standing issues might also create an issue as to class certification, if raised.)

Should plaintiffs succeed on the merits, relief also presents problems.[3]

Opponents argue that the contractual arrangement between UHC and its subscribers requires that, if the UCR determinations are shown to be flawed, UHC is required to pay the full billed charges. (Non-Settling Pls. Supp. Brief, at 32-40.)   Thus, they say, "[a]ssuming an invalid Ingenix database and subject to co-insurance and deductibles, the Delta measures the total amount of benefits that should have been paid under the terms of members' plans." (<u>Id.</u> at 33.)   This is not the time or place to rule on any damage theory, and the Court does not do so, but it must note that opponents' stated theory is very far from self-evidently correct. The more intuitively correct theory would reimburse claimants in the amount in which they were actually damaged, <u>i.e.</u>, the amount by which their UCR payment fell short of what may be demonstrated to be a properly calculated UCR.

---

[2] A motion for reconsideration of this determination is pending. The proposed settlement, if finally approved, will render it moot.

[3] <u>Grinnell</u> suggests that the possibility of treble damages (here, as a result of both RICO and antitrust claims) should not be taken into account in evaluating a settlement and the same as to attorneys' fees. 495 F.2d at 459.

Nor is it even clear that a jury, or the Court, for that matter, would determine the amount to be paid to successful claimants in light of the case law regarding remand in the case of wrongful denial or reduction of ERISA plan benefits. Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995).

Pretrial discovery and motion practice could, realistically, take some two years or so, and a trial would no doubt be quite lengthy. A favorable result, for reasons some of which have been mentioned, is by no means assured, and the amount of recovery, in the event of success, could be quite small compared to the Deltas suggested. The cost, in fees and expenses, would obviously be enormous.

All of the foregoing convinces the Court that the proposed settlement should be presented to the class, and the settlement is preliminarily approved.

**7.**

Certification of a settlement class is permitted by Fed. R. Civ. P. 23. Denney v. Deutsche Bank AG, 443 F.3d 253, 267-70 (2d Cir. 2006). "Whether certified for settlement or litigation purposes, a class must meet each of the four requirements in Rule 23(a) and at least one of the three requirements in Rule 23(b)." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 451 (S.D.N.Y. 2004) (citation omitted). "Confronted with a request for settlement-only certification, a district court need not inquire

whether the case, if tried, would present intractable management problems." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) (citing Fed. R. Civ. P. 23(b)(3)(D)).

The settlement class -- 21.11 million persons as estimated by Dr. Slottje -- plainly satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

Id. 23(a)(2) is also satisfied: there is at least one question of fact and law that is common to all members of the class, i.e., whether they have been under-reimbursed by UHC's use of the Ingenix databases. See Global Crossing, 225 F.R.D. at 451.

The typicality required by Fed. R. Civ. P. 23(a)(3) "exists where the 'claims of the representative plaintiffs arise from the same course of conduct that gives rise to claims of the other class members, when the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives.'" Global Crossing, 225 F.R.D. at 452 (quoting In re Oxford Health Plans, Inc., 191 F.R.D. 369, 375 (S.D.N.Y. 2000)). Here, all members of the class possess claims based on the reimbursement practices of UHC.

The Fed. R. Civ. P. 23(a)(4) requirement of adequate representation looks to "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to

conduct the litigation." <u>Baffa v. Donaldson, Lufkin & Jenrette</u>
<u>Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000). Here, there are no
antagonistic interests between any members of the class (including
between subscribers to UHC plans and their health care providers),
and counsel proposing the settlement are plainly qualified,
experienced and able to conduct this litigation.

The proponents of the settlement argue that Fed. R. Civ.
P. 23(b)(3) is satisfied here. That rule "permits class
certification 'if the court finds that the questions of law or fact
common to the members of the class predominate over any questions
affecting only individual members, and that a class action is
superior to other available methods for the fair and efficient
adjudication of the controversy.'" <u>In re Visa Check/Master Money</u>
<u>Antitrust Litig.</u>, 280 F.3d 124, 133 (2d Cir. 2001) (quoting Fed. R.
Civ. P. 23(b)(3)). The Rule also includes four relevant factors to
be considered in considering the superiority of a class action.
<u>Id.</u>

Here, the common issues relating to the Ingenix databases
plainly predominate over any individual issues, and a class action
is equally plainly the superior method of pursuing these millions
of small claims.

For the foregoing reasons, the Court concludes that all
of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) have been

14

met.   The settlement class is certified as such, and the Pomerantz firm is appointed lead counsel for settlement purposes.

8.

Opponents argue that, insofar as the settlement includes Malchow v. Oxford HealthPlans, Inc., No. 08 Civ. 0935 (D. N.J. filed Feb. 19, 2008) pending before the United States District Court for the District of New Jersey (Hochberg, J.), that case should be, in effect, severed from the settlement and allowed to proceed in the District of New Jersey.   (Non-Settling Pls. Supp. Brief, at 9-14.)   The basis of the argument is that the settlement is unfair to the Malchow portion of the settlement class because (opponents say) their Delta is 24% of the total Delta, while they represent only 6.5% of the settlement class.   (Id. at 9.)   The flaw in this reasoning is evident:   distribution of the settlement fund will depend on the claims that are filed by all members of the settlement class, not on some prior Delta calculation.

Apart from that, for the opponents to introduce this entirely new argument into their objection package now, after some nine months of voluminous submissions in support of their various objections, is not acceptable.

Objectors also now seek separate treatment for members of the Empire Plan (see Fourth Amended Complaint ¶¶ 19, 89-95, 243-50 (treating the Empire Plan plaintiffs as a separate sub-class)), who, opponents say, are not subject to some of the issues other

15

class members are subject to.  (See Non-Settling Pls. Supp. Brief,
at 14-15.)[4]  Whatever these considerations might mean in a trial
context, however, they are no basis on which to refuse preliminary
approval to a proposed settlement.

        Again, in any event, as with the Malchow argument just
discussed, opponents' Empire Plan proposal is hardly timely.

                              9.

        Subject to correction in light of the recent amendment to
the Settlement Agreement ("SA") (see Pappas Supp. Decl., Oct. 14,
2009, Ex. B), the proposed notice to the class and claim form are
approved.    The  Court  does  not  find  objectors'  objections
persuasive.

                             10.

        The motion (Docket No. 313) of Jamaica Hospital Medical
Center and others for leave to intervene is denied as moot, with
leave to renew if the settlement is not finally approved.

        The  motion  (Docket  No.  331)  of  plaintiffs  for
reconsideration of this Court's Memorandum and Order of August 22,
2008, is denied as moot (see n.2, supra), with leave to renew if
the settlement is not finally approved.

_____

    [4] Opponents put some weight on the fact that the Empire Plan sub-
class has survived a Fed. R. Civ. P. 12(b)(6) motion addressed to their
contract and N.Y. General Business Law § 349 claims.  (Id. at 15.)  The
Court has, in that sense, "upheld" their claims (id.), but pleading a
claim adequately remains a long way from a favorable judgment.

                             16

The motion (Docket No. 350) of Darrick E. Amtel, M.D., and others for leave to intervene is granted.

The motions (Docket Nos. 372 & 394) of Michael J. Atkiss, M.D. for dismissal of plaintiffs' counterclaims are denied as moot (see SA ¶ 16.4), with leave to renew if the settlement is not finally renewed.

The joint motion (Docket No. 344) of the plaintiffs who are proponents of the settlement and defendants for conditional certification of the settlement class, preliminary approval of the SA, and approval of the form of class notice to settlement class members is granted as set forth above.

Plaintiffs who propose the settlement and defendants are to submit to the Court a final order providing for distribution to the class of notices of a hearing date for approval of the proposed settlement, with suggested dates.

### 11.

The parties, as already noted, have submitted a very large amount of written argument as to preliminary approval. The Court has considered all parties' arguments even if not specifically addressed in writing herein.

### 12.

This Memorandum will be filed under seal. The parties are to advise the Court in writing within one week of the date

17

hereof of those sentences that must be redacted.  A redacted version of the Memorandum and Order will be filed after the appropriate redactions are made.


SO ORDERED.

Dated:  November *17*, 2009

_____
Lawrence M. McKenna
U.S.D.J.

18